UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| GEORGIA THOMPSON-EL, | ) | |
| | ) | Civil Action No. |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| GREEN BROOK TOWNSHIP, a | ) | |
| Municipal Corporation of New Jersey, | ) | |
| Police Officer ANTHONY PEPE, | ) | |
| LAWRENCE TOWNSHIP | ) | |
| a Municipal Corporation | ) | |
| of New Jersey, Police Officer | ) | |
| JOSEPH RADLINSKY, | ) | |
| and | ) | |
| John Does 1-99, | ) | |
| Defendants. | ) | |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

John R. Lanza, Esquire, Attorney ID#004831975
**LANZA & LANZA LLP**
5 Main Street
P.O. Box 2520
Flemington, New Jersey 08822
(908) 782-2600
jrlanza@lanzaandlanza.com
*ATTORNEYS FOR PLAINTIFF, GEORGIA THOMPSON-EL*

## LOCAL CIVIL RULE 10.1 STATEMENT

The mailing addresses of the parties to this action are:

Georgia Thompson-el
1629 E. 2nd Street, Second Floor
Scotch Plains, New Jersey 07076-1605

Green Brook Township
111 Greenbrook Road
Green Brook, New Jersey 08812

Anthony Pepe
Green Brook Township Police Department
109 Greenbrook Road
Green Brook, New Jersey 08812

Lawrence Township
2207 Lawrence Road
P.O. Box 6006
Lawrence, New Jersey 08648

Joseph Radlinsky
Lawrence Township Police Department
2207 Lawrence Road
P.O. Box 6006
Lawrence, New Jersey 08648

Home address (Joseph Radlinsky)
16 Smithfield Ave.
Lawrenceville, New Jersey 08648

Plaintiff Georgia Thompson-el ("Plaintiff"), by and through her attorneys, alleges as follows:

## INTRODUCTION

1. This is a civil rights action brought under 42 U.S.C. § 1983 and raising supplemental state-law claims concerning the actions of defendant police officers in the unlawful arrest and prosecution of Plaintiff without probable cause. The actions and conduct of the individual defendants are the results of policies, practices, customs, and deliberate indifference on the part of the defendants Lawrence Township and Green Brook Township.

## JURISDICTION AND VENUE

2. The Court has jurisdiction over the subject matter of this Complaint under 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331, 1343(a)(3), 1343(a)(4), and 1367(a).

3. The United States District Court for the District of New Jersey is an appropriate venue under 28 U.S.C. § 1391(b)(2) because the events giving rise to the claims in this complaint occurred in New Jersey.

## PARTIES

4. Plaintiff Georgia Thompson-el is and was at all times relevant to the Complaint a resident of 1629 E. 2nd Street, 2nd Floor, Scotch Plains, New Jersey 07076-1605. Plaintiff was formerly known as "Georgia Thompson" and was identified as Georgia Thompson during certain of the relevant times in this Complaint.

3

**Green Brook Defendants**

5.    Defendant Green Brook Township is a municipal corporation of the State of New Jersey having its principal place of business at  111 Greenbrook Road, Green Brook, New Jersey 08812.  Defendant Green Brook Township owns, operates, manages, directs, and controls the Green Brook Police Department, and employs defendant Anthony Pepe.

6.    Defendant Anthony Pepe is and was at all times relevant to this Complaint a police officer in the Green Brook Police Department.  He is sued in his individual and official capacities.

**Lawrence Defendants**

7.    Defendant Lawrence Township is a municipal corporation of the State of New Jersey, having its principal place of business at 2207 Lawrence Road, Lawrence, New Jersey 08648.   Defendant Lawrence Township owns, operates, manages, directs and controls the Lawrence Township Police Department, and employs defendant Joseph Radlinsky.

8.    Defendant Joseph Radlinsky is and was at all times relevant to this Complaint a police officer in the Lawrence Township Police Department.  He is sued in his individual and official capacities.

**John Doe Defendants**

9.    Defendants John Does 1 to 99, inclusive, are sued under fictitious names.   Plaintiff alleges that each of the defendants sued under fictitious names is in some manner responsible for the wrongs and damages alleged below, and was acting under color of state law and jointly with the other defendants.

## FACTUAL ALLEGATIONS

10.  Plaintiff is a 39-year-old  black woman who lives in Scotch Plains, New Jersey, with her mother and two young children.   At all times relevant to this complaint,  Plaintiff was employed as a licensed electrician.  She is a member of the International Brotherhood of Electrical Workers (" IBEW ") Local #3.

11.    Plaintiff has no criminal record.

12.  Defendant police officers caused Plaintiff to be arrested and charged with multiple crimes without probable cause and with willful and reckless disregard as to whether they had charged the right person with the alleged crimes.   The Green Brook Police Department and Officer Pepe caused charges to be brought against Plaintiff and her ex-husband Douglass Thompson for allegedly using debit cards stolen from a customer at the Bonefish Grill, 215 Route 22 East, Green Brook, New Jersey on April 8, 2017.   The Lawrence Police Department and Officer Radlinsky caused charges to be brought against Plaintiff and Kenneth Edwards (a man she had never met) for allegedly stealing credit cards from a customer of Zoe's Kitchen, 3371 Brunswick Pike, Suite 38 B, Lawrenceville, New Jersey on that same date of April 8, 2017.

13.  All of the charges brought by the Lawrence and Green Brook Police Departments against Plaintiff were false and were dismissed.

14.  The Green Brook and Lawrence defendants are jointly responsible for Plaintiff's damages because they acted jointly in determining that it was Plaintiff who had committed the alleged crimes.

15.  Both police departments authorized charges against Plaintiff when a reasonable police officer would have known  that there was no probable cause to conclude that Plaintiff

was the criminal suspect and there was a high likelihood that they had misidentified the suspect in the crime.  Moreover, both Officer Pepe of Green Brook and Officer Radlinsky of Lawrence knowingly and deliberately, or with a reckless disregard for the truth,  through false statements or material omissions to the Grand Jury caused the Grand Jury to find probable cause to indict Plaintiff for the alleged crimes.

16.  As a result of defendants' conduct, Plaintiff spent 11 days in jail, suffered stress and humiliation, physical ailments and financial consequences.

17.  At all times relevant to this Complaint, all defendants acted under color of state law.

**The Green Brook Investigation.**

18.  Plaintiff spent the day of April 8, 2017 going to a medical appointment, shopping, and running errands in Union, Somerset and Essex Counties, New Jersey.

19.  At  around 5:00 PM,  Plaintiff met her friend Junior Hamilton for dinner at the Bonefish Grill in Green Brook, New Jersey.   When they finished their meals, Plaintiff and Hamilton left in separate cars.  Plaintiff believes that she and Hamilton left the Bonefish Grill at sometime between 6:30 PM and  7:00 PM.

20.  Plaintiff left in a 2014 black Honda Accord and Hamilton left in a 2008 silver Nissan.

21.   On her way home, Plaintiff stopped at the Costco in Watchung to fill her car with gas.  She completed the purchase at 7:38 PM, as shown by her Transaction Detail form for her credit card.   She then returned home to Scotch Plains for the evening.

22.  On that same day of  April 8, 2017,  a person referred to as "T.L." was eating dinner at the Bonefish Grill in Green Brook.   When T.L. sought her credit and debit cards to pay

her bill, they were missing from her wallet.    Soon thereafter, she received a fraudulent activity alert from either her credit or debit card company.

23.  At about 7:15 PM on April 8, 2017, a person used T.L's debit card to complete a transaction for about $500 at Walmart in Watchung, New Jersey.

24.  At  about 7:36 PM on April 8, 2017, a person attempted to use T.L.'s debit and credit cards  to make purchases at the Target store in Watchung, New Jersey.   Upon information and belief, one or more of the attempted transactions using T.L.'s debit or credit cards went through.

25.  T.L. did not see and could not describe the person or persons who took her credit and debit cards.

26.  T.L. called the Green Brook Police Department.   Green Brook Police Officers Michael Kula, Sgt. John Skikus, Adam Seidel and Kevin O'Connor arrived at the Bonefish Grill to investigate the incident.

27.  Officer Kula submitted a Police Incident Report, which states that an employee from the Bonefish Grill gave the police the license plate numbers for Plaintiff's 2014 Honda Accord and Junior Hamilton's silver Nissan.

28.  The Police Incident Report does not say why the Bonefish Grill employee gave the police the license plate numbers for Plaintiff's and Hamilton's cars, except for a vague and conclusory statement that the employee believed the "actors left in" Plaintiff's and Hamilton's cars.   There is no suggestion that the employee actually witnessed the credit card theft, tried to stop the "actors," or told T.L. that he or she saw the actors take her credit card.   The Police Incident Report does not state why the employee took down the cars' license plate numbers.

29. None of the police officers who investigated the incident recorded the name, address, phone number or other identification or contact information of the Bonefish Grill employee who obtained the cars' license plate numbers.

30. None of the police officers obtained a detailed statement from the employee who recorded the cars' license plate numbers.

31. When the Somerset County Assistant Prosecutor was later asked for the employee's name, he responded "I have inquired with the Green Brook Police about the name of the Bonefish Grill employee whose name and address you have requested in Paragraph 3 of your letter. Unfortunately, my inquiry yields the following information, that is, no name can be provided as to the name of the Bonefish Grill employee. There is a high turnover at the restaurant and no one knows the name of the employee."

32. The police obtained a photo of Plaintiff allegedly from the New Jersey Department of Motor Vehicles ("DMV").

33. The police also obtained a DMV photo of Douglass Thompson. Douglass Thompson is Plaintiff's ex-husband. During the relevant times in the complaint, she had been divorced from him for several years. She does not socialize with him and he was not at the Bonefish Grill with her on the evening of April 8, 2017. He had no interest in Plaintiff's 2014 Honda Accord or Junior Hamilton's silver Nissan. It is not clear why the police pulled up a DMV photo of Douglass Thompson.

34. On April 13, 2017, Green Brook Police Officer Anthony Pepe conducted a follow up investigation.

35.   Officer Pepe said he reviewed the Police Incident Report, including the statement that the unnamed Bonefish Grill employee provided registrations for the cars the "actors" supposedly left in.

36.   Officer Pepe also obtained video surveillance from the Walmart and Target stores in Watchung, New Jersey of the persons allegedly using T.L's payment cards.   The video surveillance depicted a large-framed man with a  beard and glasses, a black woman in a white baseball hat, and a pregnant black woman in scrubs near the cash registers at the time of the  transactions at issue in Walmart and Target.   The surveillance video also shows these three persons leaving the stores.

37.   Officer Pepe's report also states that he "reviewed the [Bonefish Grill's] video surveillance" and saw the same three alleged suspects.   He reported that the "video shows the three suspects enter the restaurant and then leave approximately 15 minutes after entering."

38.   The police never produced videos, but only still outdoor photographs from the Bonefish Grill for April 8, 2017.   Those photographs showed a large-framed man, of uncertain race, with a beard and glasses, a woman in a white baseball hat, and a pregnant black woman in scrubs leaving the restaurant between 6:35 PM and 6:58 PM.

39.   Officer Pepe claimed that Plaintiff was the woman in the white hat in the Target and Walmart videos and the Bonefish Grill photographs.   However, that woman's face is unrecognizable from any of the videos from Target or Walmart or from the still photographs from the Bonefish Grill.

40.   Officer Pepe could not have reasonably concluded from the photographs and videos that the woman in the white baseball hat was the Plaintiff.     The only thing that Plaintiff

9

had in common with the suspect is that they were both black women and they had both been at the Bonefish Grill on the same evening.

41.   Officer Pepe could not have reasonably concluded from the videos or the photographs that the large-framed man was either Junior Hamilton, the man Plaintiff was with that evening, or Douglass Thompson, her ex-husband.    Neither Hamilton nor Douglass Thompson resembles the large-framed man in the videos and photographs, and Thompson was not even at the Bonefish Grill on the evening in question.

42.   Moreover, the video from Walmart also shows the three suspects leaving the store, walking into the parking lot, and getting into a single car.   According to the Police Incident Report, the Bonefish Grill employee said that the suspects left in separate cars.

43.   The car that the three suspects left Walmart in was neither a 2014 black Honda Accord nor a  2008 silver Nissan.   The video shows that the car was black, but it clearly had a longer trunk and a different front grill than the 2014 Honda Accord.   Officer Pepe and the Green Brook Police did not investigate whether the car the suspects left Walmart in was the same make and model as either of the cars that the Bonefish Grill employee allegedly saw Plaintiff and Hamilton leave in.

44.   Officer Pepe and the Green Brook Police issued an Alert Bulletin, notifying other police departments of the crime, and showing images of the woman in the white hat and the large-framed man from the store surveillance videos.  The Alert Bulletin identified the woman in the white hat as "Georgia Thompson" and the large-framed man as "Douglas Thompson."

45.   As set forth in a later section of this complaint, the Green Brook Police falsely caused a Grand Jury indictment to be issued against Plaintiff and Douglass Thompson.

**The Lawrence Investigation**

46.  Earlier, on that same day of April 8, 2017,  at about 1:00 PM,  a man identified as P.L. said that his credit cards were stolen as he ate lunch at a restaurant called Zoe's Kitchen in Lawrenceville, New Jersey.    P.L. did not see the person who had taken his credit cards. He said he felt a bump and turned around.

47.  After P.L. felt the bump, he saw three black people sitting at a table near him.   He assumed that they took his credit cards and questioned them.  They offered to allow him to search their bags.   He declined to search their bags, and he cancelled his credit cards.

48.  Thereafter, on April 8, 2017,  at about 1:45 PM, someone made three attempts  to use P.L's credit cards at the Target store in South Brunswick, New Jersey.  The transactions were declined.  P.L's credit card company notified him of the attempted transactions.

49.  P.L then contacted the Lawrence Police Department  and spoke to Officer Bruce Miller.

50.  Officer Miller's Preliminary Investigation Report states that P.L.  felt his jacket move  while eating lunch at Zoe's Kitchen, and saw three "suspects" at a table in the restaurant.  P.L. described the "suspects" as "1 B/M and 1B/F middle aged and 1B/F mid 20's ."   The Report says "[n]o further descriptions could be provided."

51.  On April 17, 2017, Lawrence Policer Officer Joseph Radlinsky performed a follow up investigation of the theft of P.L's credit cards in Zoe's Kitchen.

52.  On April 17, 2017, Officer Radlinsky reported that he obtained surveillance video and two still images from the Target store in South Brunswick, where someone had attempted to use P.L's credit card on April 8th.   He reported that he observed a black

11

female wearing a white baseball hat and white and black colored sneakers and a long sleeve jacket over a red colored shirt with white writing on it.  He further reported that he also observed a larger framed male, with a beard and a bucket hat.

53.  According to his report, Officer Radlinsky then emailed P.L. and "requested that [he] view the still images of the male and female at the Target store to see if they were two of the parties that were seated behind him at the restaurant."

54.  While waiting for P.L. to respond to his email, Officer Radlinsky viewed the Alert Bulletin from the Green Brook Police Department identifying the woman in the white baseball hat as Georgia Thompson.  Officer Radlinsky said that he "immediately recognized the black female in one of the photos as she was wearing the same clothing as the female from my investigation."  He said that the black male in the Green Brook Alert Bulletin was also the black male that he had seen on the Target surveillance video.

55.  Officer Radlinsky contacted Officer Pepe after seeing the Green Brook Alert Bulletin.

56.  Officer Radlinsky reported that he asked Officer Pepe about "his identification of [Plaintiff] and [Officer Pepe] stated that he identified [Plaintiff] with '100% certainty' after comparing [Plaintiff's]  New Jersey driver's license photo to his surveillance video."

57.  Officer Radlinsky also reported that Officer Pepe told him Plaintiff owned "the suspect vehicle."

58.  Officer Radlinsky also reported that Officer Pepe said Plaintiff denied involvement and said she knew nothing about the incident.

59. Officer Radlinsky's report says that he then compared Plaintiff's driver's license photo to the surveillance video from Target and "confirmed that the female with the white colored baseball hat was [Plaintiff]."

60. Officer Radlinsky could not have reasonably identified Plaintiff as the suspect based on the surveillance video and blurry photographs, which did not provide clear images of the suspect's face. All that Plaintiff and the suspect had in common was their race and gender.

61. Officer Radlinsky could not have reasonably concluded that Plaintiff was the person who had stolen P.L.'s credit cards based on the photographic and video evidence.

62. Officer Radlinsky reported that he also compared Douglass Thompson's driver's license photo to the surveillance video from Target but was "unable to determine with 100% certainty that the large framed black male from this incident was Douglass E. Thompson."

63. Officer Radlinsky reported that he brought the victim, P.L., in "to view the surveillance video photos" that Radlinsky had recovered from the Target store. Officer Radlinsky used an improper photo identification procedure that suggested to P.L. that the persons in the Target video and photographs were the same persons P.L saw at the table behind him when his credit cards were stolen, and that the woman in the white hat was Plaintiff.

64. The photo identification was suggestive and improper, in part, because Officer Radlinsky conducted the procedure himself, and did not keep a record, in violation of the Attorney General Guidelines.

65.  Following the Attorney General's guidelines was especially important because the photo identification took place more than two weeks after the incident occurred.

66.  On the date of the incident, P.L. was unable to provide any detail about the suspects other than their races, approximate ages and sexes.   Yet, two weeks later, when Officer Radlinsky brought him in for the photo identification,  P.L. was supposedly able to identify Plaintiff as the woman who sat behind him at Zoe's Kitchen on April 8th, based only on her DMV photo.    A reasonable police officer, acting with due diligence and with due record of Plaintiff's constitutional rights, would have understood that there was a high likelihood of misidentification, especially using a suggestive identification procedure.

67.  Officer Radlinsky and the Lawrence Township Police Department should have been especially aware of the dangers of racial profiling and stereotyping because they were named as defendants in an action filed on February 20, 2015 alleging that they violated the rights of a black man who had been falsely accused of theft.

68.  Officer Radlinsky's report stated that based on an Alert Bulletin from West Windsor, he concluded with "100% certainty that the male in the video" was Kenneth Edwards."

69.  Plaintiff does not know and has never met Edwards.

70.  To summarize,  Officer Radlinsky said that he determined that the people in the Green Brook Police Department Alert Bulletin were the same people in the South Brunswick Target surveillance video, who had used P.L's credit card.   However, Officer Pepe claimed that he was certain that the large-framed man was Douglass Thompson, while Officer Radlinsky claimed that he was certain that the large-framed man was Kenneth Edwards.  The discrepancy in identifying the male alleged partner-in-crime should have

alerted any reasonable police officer that the surveillance images were not sufficiently clear to identify suspects, and of the need for a more thorough investigation before charging Plaintiff with multiple crimes.

**The Mercer County Charges Against Plaintiff and Kenneth Edwards**

71.  On June 8, 2017,  Officer Radlinsky prepared and filed one Complaint-Summons each for Kenneth Edwards and Plaintiff charging them each with violations of N.J.S.A. 2C:20-3A (theft of movable property, a disorderly persons offense),  and N.J.S.A  2C:21-6C(1) (credit card theft, a fourth degree crime).

72.  The Affidavit of Probable Cause that Officer Radlinsky completed on June 8, 2017 in support of the Complaint-Summons contained inaccurate information.  It stated that "[v]ictim witnessed [Plaintiff and Edwards] at the time that his wallet was stolen."

73.  However,  P.L. did not see who took his credit cards.   He turned and saw three black people sitting at a table, who he assumed took the credit cards.

74.  Moreover, the police reports do not say that P.L. ever identified Edwards as one of the people "at the time that his wallet was stolen."

75.  Officer Radlinsky also omitted material exculpatory facts from his Grand Jury testimony.

76.  During his Grand Jury testimony, Officer Radlinsky agreed with the Prosecutor's statement that "it was also determined through the Green Brook Police Department that the vehicle used in their offense was registered to Georgia Thompson."

77.  Officer Radlinsky's testimony led the Grand Jury to believe that the Green Brook Police had evidence that Plaintiff's car was used in the alleged offenses.  He failed to reveal to the Grand Jury that no one in the Green Brook  matter had actually witnessed the alleged

theft, and that there was no explanation for why the unnamed Bonefish Grill employee wrote down the license plate of Plaintiff's car.

78. Moreover, there was no evidence that the vehicle the three suspects left Walmart in in the Somerset County case was registered to Plaintiff. Therefore, the statement that the vehicle "used in the offense" was registered to Plaintiff was false and misleading.

79. Officer Radlinsky also testified that the Green Brook Police "had a video that showed the rear plate of the vehicle ... and running the plate matched the vehicle." He also implied that he saw the plate. This testimony was false and misleading.

80. Officer Radlinsky also testified that based on Plaintiff's driver's license, he was able to match her as the woman who used the victim's credit card in the Target Store in South Brunswick. This testimony was false and misleading. The surveillance images from the South Brunswick Target did not show a clear image of the suspect's face and the still photograph was far too blurry for  Officer Radlinsky to match Plaintiff to those images.

81. Officer Radlinsky also testified that he was able to identify Plaintiff as using the victim's credit card in the surveillance video. This testimony was false and misleading because Officer Radlinsky did not have a clear image of the suspect's face.

82. Officer Radlinsky also testified that the victim "positively identified Georgia Thompson as the woman that was sitting behind him at Zoe's Kitchen," when any such identification was the result of a suggestive and flawed identification procedure.

83. On February 1, 2018, the Mercer County Grand Jury indicted Plaintiff and Kenneth Edwards for credit card theft in violation of N.J.S.A. 2C:21-6C (1).

16

**The Somerset County Charges Against Plaintiff and Douglass Thompson**

84.  On September 21, 2017,  Officer Pepe prepared and filed one Complaint-Warrant each against Georgia Thompson and Douglass Thompson, charging them each with two counts of  N.J.S.A. 2C:21-6.1B(1) (using a scanning device with intent to defraud, a third degree crime),  two  counts  of  N.J.S.A.  2C:17a-(4)  (identity  theft, a third degree crime), and  one count of  N.J.S.A. 2C:20-4 (theft by deception, a third degree crime).

85.     The Affidavit of Probable Cause stated that it was "learned through surveillance video" that it was Plaintiff who had used the victim's cards at the Target and Walmart in Watchung, New Jersey.     Officer Pepe could not have reasonably drawn this conclusion from the surveillance video.

86.  On December 13, 2017, the Somerset County Prosecutor obtained Grand Jury indictments against Douglass Thompson and Plaintiff for the counts in the Warrant-Complaint.

87.  Officer Pepe made inaccurate and misleading statements to the Grand Jury, and omitted material information that could have provided the Grand Jury with an accurate understanding of the nature and results of the investigation.

88.    For example, Officer Pepe testified that a Bonefish Grill employee obtained two New Jersey registrations of the vehicle they believed the "actors" left in, one for a  silver Nissan with license plate WLZ70S,  and the other for a black Honda, with a license plate A31ELV.

89.    Officer Pepe failed to tell the Grand Jury that the silver Nissan identified by the Bonefish Grill employee was registered to Junior Hamilton, not Douglass Thompson,

Plaintiff's ex-husband and co-defendant.    Officer Pepe failed to disclose that the police concluded that Junior Hamilton was not one of the alleged "actors" in the offense, and that another alleged "actor," Douglass Thompson  had no interest in either of the two vehicles allegedly used in the offense.

90.    Officer Pepe failed to tell the Grand Jury that there was no evidence that the employee had actually seen the alleged theft; there was no evidence of what the employee had actually seen to cause him to take Plaintiff's license number; and the Green Brook police could not identify the employee.    Thus, his testimony as to what the employee supposedly saw was misleading.

91.    In his Grand Jury testimony, Officer Pepe also testified that Plaintiff's DMV photo matched the image of the suspect in the Bonefish Grill images.  This testimony was false and misleading because the photographs from the Bonefish Grill were not sufficiently clear for Officer Pepe or anyone to match them to Plaintiff's DMV photo.

92.    Officer Pepe also testified that he obtained a DMV photo of Douglass Thompson and that he was a positive match with the suspect in the surveillance videos.  This statement was also not true.

93.    Officer Pepe also testified that the Target store loss prevention video showed images of Plaintiff and Douglass Thompson entering the store and attempting to make a purchase.    This testimony was false and misleading because Officer Pepe could not have drawn these conclusions from the surveillance video, which was unclear.

94.    Officer Pepe also did not disclose to the Grand Jury that the Bonefish Grill employee said the suspects left in separate cars, but the suspects left Walmart in the same, single car, which was neither a 2014 Honda Accord nor a silver Nissan.

95.    Officer Pepe also told the Grand Jury that Plaintiff said she was "out of the country" when he contacted Plaintiff.    Plaintiff did not say that she was "out of the country," but rather that she was working in New York City, and therefore was out of the State and County.

96.    Officer Pepe also testified that he saw Plaintiff and Douglass Thompson "at the Bonefish Grill on video" and "at the Target."   The images were not sufficiently clear for Officer Pepe to reach these conclusions.    Therefore, the testimony was false and misleading.

97.    Officer Pepe also failed to tell the Grand Jury that the Green Brook and Lawrence police departments disagreed on the identity of the large-framed man with the beard and glasses seen in the surveillance videos.

**Incarceration**

98.    Bench warrants were issued by Mercer and Somerset Counties for Plaintiff's arrest.

99.    Defendants or John Doe defendants caused the New Jersey Criminal Justice Information System to report Plaintiff as "armed and dangerous, " which was not true.

100. On April 4, 2018,  a Berkeley Heights police officer stopped Plaintiff's car, confirmed the warrants, and called for back up, which arrived shortly thereafter.   Plaintiff had never been arrested before and was confused, frightened, and humiliated.   She had committed no crime, and did not understand why she was being arrested.     From the time of her unlawful and unconstitutional arrest, incarceration and prosecution,  Plaintiff knew she was innocent.    She asked herself how was she to support and raise her children; will she go to jail; will she lose her job; will she be labelled a criminal for the rest of her life?

101. Plaintiff was brought to the Berkeley Heights Police Station and then to the Somerset County jail where she stayed from April 5, 2018 to April 12, 2018.

102. On or about April 12, 2018, Plaintiff was transferred to the Mercer County Corrections Center, where she was detained until April 16, 2018.

**Dismissal of Charges**

103. On October 15, 2018, the Mercer County charges were dismissed against Plaintiff.

104. On November 2, 2018, the Somerset County charges were dismissed against Plaintiff.

105. On November 2, 2018, the Somerset County charges were dismissed against Douglass Thompson.

106. The Mercer County charges may still be pending against Kenneth Edwards, who may not have appeared for any court proceedings.

107. There was no legal cause to justify the institution of charges against Plaintiff resulting in her arrest and imprisonment.

108. At all times relevant to this Complaint, the conduct of all of the defendants was willful, reckless, and in callous disregard of Plaintiff's rights under federal and state law.

109. As a direct and proximate result of the conduct of the defendants, Plaintiff suffered and continues to suffer physical and psychological harm, pain and suffering, some or all of which may be permanent, and financial losses.

110. The defendants acted jointly and are jointly and severally liable for Plaintiff's damages.

111. Plaintiff served Tort Claims Act notices on the defendant municipalities.

112.

## CAUSES OF ACTION

### COUNT I

**Against Defendant Green Brook Police Officer Anthony Pepe**
**Federal Constitutional Claims under the Fourth and Fourteenth Amendments**
**42 U.S.C. § 1983 (Unlawful Arrest and Imprisonment)**

113.    Plaintiff repeats the foregoing allegations as if fully set forth herein.

114.    The actions of Officer Pepe violated Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution to be free from unlawful arrest and imprisonment without probable cause.

115.    For the reasons set forth in this complaint, Officer Pepe caused the initiation of criminal charges against Plaintiff without probable cause, and acted with reckless indifference as to whether Plaintiff was the person who committed the alleged crimes.

116.    Officer Pepe's initiation of charges against Plaintiff and his testimony before the Grand Jury caused Plaintiff to be arrested by the Berkeley Heights Police Department and confined in jail.

117.    As a direct and proximate result of Officer Pepe's conduct, Plaintiff suffered and continues to suffer physical and psychological harm, pain and suffering, some or all of which may be permanent, and financial losses.

### COUNT II

**Against Defendant Green Brook Police Officer Anthony Pepe**
**Federal Constitutional Claims under the Fourth and Fourteenth Amendments**
**42 U.S.C. § 1983 (Malicious Prosecution)**

118.    Plaintiff repeats the foregoing allegations as if fully set forth herein.

119.     The actions of Officer Pepe violated Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution to be free from malicious prosecution.

120.     Officer Pepe initiated a criminal proceeding against Plaintiff and caused a Grand Jury indictment against her by making false and misleading statements.

121.     For the reasons set forth in this complaint, Officer Pepe lacked probable cause to initiate the proceeding against Plaintiff, and acted with reckless indifference as to whether Plaintiff was the person who committed the alleged crimes.

122.     The criminal proceeding ended in Plaintiff's favor.

123.     Officer Pepe acted maliciously in causing the initiation of the criminal proceedings against Plaintiff.

124.     As a consequence of the criminal proceedings, Plaintiff suffered a significant deprivation of liberty.

125.     As a direct and proximate result of Officer Pepe's conduct, Plaintiff suffered and continues to suffer physical and psychological harm, pain and suffering, some or all of which may be permanent, and financial losses.

## COUNT III

**Against Defendant Green Brook Township**
**Federal Constitutional Claims under Fourth and Fourteenth Amendments**
**42  U.S.C. § 1983**

126.     Plaintiff repeats the foregoing allegations as if fully set forth herein.

127.     The violations of  Plaintiff's constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution, Plaintiff's damages, and the

conduct of Officer Pepe and other investigating police officers were directly and proximately caused by the actions and/or inactions of defendant Green Brook Township which has encouraged, tolerated, ratified, and has been deliberately indifferent to the following policies, patterns, practices and customs, and to the need for more or different training, supervision, investigation, or discipline in the areas of:

a.  Proper investigation of alleged criminal offenses;

b.  Avoidance of racial profiling and stereotyping;

c.   The proper exercise of police powers, including but not limited to the bringing of criminal charges;

d.  Proper review and supervision of police investigations;

e.  The failure of police officers to follow established policies, procedures, directives, and instructions regarding arrests and the institution of criminal charges under such circumstances as presented by this case.

128.  As a direct and proximate result of the conduct of the defendant Green Brook Plaintiff suffered and continues to suffer physical and psychological harm, pain and suffering, some or all of which may be permanent, and financial losses.

## COUNT IV

### Green Brook John Doe Defendant
### Under 42 U.S.C. § 1983 and Common Law

129.      Plaintiff repeats the foregoing allegations as if fully set forth herein.

130.      John Doe was Officer Pepe's supervisor and was responsible for reviewing and approving his decision to initiate criminal proceedings against Plaintiff.

131.     John Doe knew that Officer Pepe had initiated criminal proceedings against Plaintiff without probable cause.

132.     John Doe with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused the violations herein.

133.     John Doe's reckless indifference in carrying out his or her supervisory responsibilities violated Plaintiff's rights under the Fourth and Fourteenth Amendments to the Constitution and under state common law.

134.     As a direct and proximate result of the conduct of defendant John Doe, Plaintiff suffered and continues to suffer physical and psychological harm, pain and suffering, some or all of which may be permanent, and financial losses.

## COUNT V

### Against all Green Brook Defendants
### False Arrest and False Imprisonment

135.     Plaintiff repeats the foregoing allegations as if fully set forth herein.

136.     Without probable cause, and with reckless indifference to the consequences of their actions, the Green Brook Defendants caused an arrest warrant to issue against Plaintiff.

137.     The issuance of the arrest warrant caused Plaintiff to be arrested and detained in jail for crimes that she did not commit.

138.     Defendant Green Brook is the employer of the Green Brook Police Officer Defendants and is liable for their actions.

139.    As a direct and proximate result of the false arrest, Plaintiff suffered and continues to suffer physical and psychological harm, pain and suffering, some or all of which may be permanent, and financial losses.

## COUNT VI
### Against all Green Brook Defendants
### Malicious Prosecution

140.    Plaintiff repeats the foregoing allegations as if fully set forth herein.

141.    The Green Brook Defendants caused criminal charges to be brought against Plaintiff without probable cause and with reckless disregard as to whether Plaintiff had committed the alleged crimes.

142.    The Green Brook Defendants were motivated by malice in causing charges to be brought against Plaintiff without probable cause.

143.    The criminal charges were dismissed in their entirety and thus the criminal action was terminated favorably to Plaintiff.

144.    Defendant Green Brook is the employer of the Green Brook Police Officer Defendants and is liable for their actions.

145.    As a direct and proximate result of the malicious prosecution, Plaintiff suffered and continues to suffer physical and psychological harm, pain and suffering, some or all of which may be permanent, and financial losses.

## COUNT VII

### Against all Green Brook Defendants
### New Jersey Civil Rights Act (N.J.S.A. 10:6-2)

146.    Plaintiff repeats the foregoing allegations as if fully set forth herein.

147.    The New Jersey Civil Rights Act (NJCRA), N.J.S.A. 10:6-2 provides a private right of action for claims based on a violation of any substantive rights, privileges

25

or immunities conferred by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or the laws of New Jersey.

148.    By causing criminal charges to be filed against Plaintiff without probable cause, and by maliciously prosecuting Plaintiff and causing her arrest and imprisonment, the Green Brook Defendants violated her rights to be free from arrest and prosecution without probable cause in violation of the Fourth and Fourteenth Amendments to the United States Constitution and Article 1,   Paragraphs 1 and 7 of the New Jersey Constitution.

149.    By charging Plaintiff with crimes based upon her race and gender only, without regard as to whether Plaintiff otherwise resembled the suspect, the Green Brook Defendants engaged in racial profiling in violation of the Fourteenth Amendment to the United States Constitution and Article I, Paragraph 5 of the New Jersey Constitution.

150.    In addition, for the reasons set forth in Count III, Green Brook Township violated Plaintiff's rights under the New Jersey Civil Rights Act.

151.    As a direct and proximate result of the violation of the New Jersey Civil Rights Act, Plaintiff suffered and continues to suffer physical and psychological harm, pain and suffering, some or all of which may be permanent, and financial losses.

### COUNT VIII

**Against Lawrence Police Officer Joseph Radlinsky**
**Federal Constitutional Claims under the Fourth and Fourteenth Amendments**
**42  U.S.C. § 1983 (Unlawful Arrest and Imprisonment)**

152.    Plaintiff repeats the foregoing allegations as if fully set forth herein.

153.    The actions of the Lawrence Police Officer Radlinsky violated Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States

Constitution to be free from unlawful arrest and imprisonment without probable cause.

154.    For the reasons set forth in this complaint, Officer Radlinsky caused the initiation of criminal charges against Plaintiff without probable cause, and acted with reckless indifference as to whether Plaintiff was the person who committed the alleged crimes.

155.    Officer Radlinsky's initiation of charges against Plaintiff and his testimony before the Grand Jury caused Plaintiff to be arrested by the Berkeley Heights Police Department and confined in jail.

156.    As a direct and proximate result of Officer Radlinsky's conduct, Plaintiff suffered and continues to suffer physical and psychological harm, pain and suffering, some or all of which may be permanent, and financial losses.

### COUNT IX

**Against Defendant Lawrence Township Police Officer Joseph Radlinsky**
**Federal Constitutional Claims under the Fourth and Fourteenth**
**Amendments**
**42 U.S.C. § 1983 (Malicious Prosecution)**

157.    Plaintiff repeats the foregoing allegations as fully set forth herein.

158.    The actions of Officer Radlinsky violated Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution to be free from malicious prosecution.

159.    Officer Radlinsky caused the initiation of a criminal proceeding against Plaintiff and caused a Grand Jury indictment against her by making false and misleading statements.

160.    For the reasons set forth in this complaint, Officer Radlinsky lacked probable cause to initiate the proceeding, and acted with reckless indifference as to whether Plaintiff was the person who had committed the alleged crimes.

161.    The criminal proceeding ended in Plaintiff's favor.

162.    Officer Radlinsky acted maliciously in causing the initiation of the criminal proceedings against Plaintiff.

163.    As a consequence of the criminal proceedings, Plaintiff suffered a significant deprivation of liberty.

164.    As a direct and proximate cause of Officer Radlinsky's conduct, Plaintiff suffered and continues to suffer physical and psychological harm, pain and suffering, some or all of which may be permanent, and financial losses.

## COUNT X

**Against Defendant Lawrence Township**
**Federal Constitutional Claims under the Fourth and Fourteenth**
**Amendments**
**42 U.S.C. § 1983**

165.    Plaintiff repeats the foregoing allegations as if fully set forth herein.

166.    The violations of Plaintiff's constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution, Plaintiff's damages, and the conduct of the individual defendant were directly and proximately caused by the actions and/or inactions of defendant Lawrence Township which has encouraged, tolerated, ratified, and has been deliberately indifferent to the following policies, patterns, practices and customs, and to the need for more or different training, supervision, investigation, or discipline in the areas of:

a.    Proper investigation of alleged criminal offenses, including photograph identification procedures;

b.  Avoidance of racial stereotyping and profiling;

c.  The proper exercise of police powers, including but not limited to the bringing of criminal charges;

d.   Proper review and supervision of police investigations; and

e.  The failure of police officers to follow established policies, procedures, directives, and instructions regarding arrests and the institution of criminal charges under such circumstances as presented by this case.

167.    As a direct and proximately result, Plaintiff suffered and continues to suffer physical and psychological harm, pain and suffering, some or all of which may be permanent, and financial losses.

## COUNT XI

### Lawrence John Doe Defendant
### Supervisory Liability under 42 U.S.C. § 1983 and Common Law

168.    Plaintiff repeats the foregoing allegations as if fully set forth herein.

169.    John Doe was Officer Radlinsky's supervisor and was responsible for reviewing and approving his decision to initiate criminal proceedings against Plaintiff.

170.    John Doe knew that Officer Radlinsky had initiated criminal proceedings against Plaintiff without probable cause.

171.    John Doe, with a deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused the violations herein.

172.     John Doe's reckless indifference in carrying out his or her supervisory responsibilities violated Plaintiff's rights under the Fourth and Fourteenth Amendments to the Constitution and under state common law.

173.     As a direct and proximate result of the conduct of defendant John Doe, Plaintiff suffered and continues to suffer physical and psychological harm, pain and suffering, some or all of which may be permanent, and financial losses.

## COUNT XII

### Against all Lawrence Defendants
### False Arrest and False Imprisonment

174.  Plaintiff repeats the foregoing allegations as if fully set forth herein.

175.  Without probable cause, and with reckless indifference to the consequences, the Lawrence Defendants caused an arrest warrant to issue against Plaintiff.

176.  The issuance of the arrest warrant caused Plaintiff to be arrested and detained in jail for crimes that she did not commit.

177.  Lawrence Township is the employer of the Lawrence Police Officer Defendants and is liable for their actions.

178.  As a direct and proximate result of the false arrest, Plaintiff suffered and continues to suffer physical and psychological harm, pain and suffering, some or all of which may be permanent, and financial losses.

## COUNT XIII

### Against all Lawrence Defendants
### Malicious Prosecution

179.     Plaintiff repeats the foregoing allegations as if fully set forth herein.

180.     The Lawrence Defendants caused criminal charges to be brought against Plaintiff without probable cause and with reckless disregard as to whether Plaintiff had committed the alleged crimes.

181.     The Lawrence Defendants were motivated by malice in causing charges to be brought against Plaintiff without probable cause.

182.     The criminal charges were dismissed in their entirety and thus the criminal action was terminated favorably to Plaintiff.

183.     Defendant Lawrence Township is the employer of the Lawrence Police Officer Defendants and is liable for their actions.

184.     As a direct and proximate result of the malicious prosecution, Plaintiff suffered and continues to suffer physical and psychological harm, pain and suffering, some or all of which may be permanent, and financial losses.

## COUNT XIV

### Against all Lawrence Defendants
### New Jersey Civil Rights Act (N.J.S.A. 10:6-2)

166.     Plaintiff repeats the foregoing allegations as if fully set forth herein.

167     The New Jersey Civil Rights Act (NJCRA), N.J.S.A. 10:6-2 provides a private right of action for claims based on a violation of any substantive rights, privileges or immunities conferred by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or the laws of New Jersey.

168     By causing criminal charges to be filed against Plaintiff without probable cause, and by maliciously prosecuting Plaintiff and causing her arrest and imprisonment, the Lawrence Defendants violated her rights to be free from arrest and prosecution without

probable cause under the Fourth and Fourteenth Amendments to the United States Constitution and Article 1, Paragraphs 1 and 7 of the New Jersey Constitution.

169     By charging Plaintiff with crimes based upon her race and gender only, without regard as to whether Plaintiff otherwise resembled the suspect, the Lawrence Defendants engaged in racial profiling in violation of the Fourteenth Amendment to the United States Constitution and Article I, paragraph 5 of the New Jersey Constitution.

170     In addition, for the reasons set forth in Count X, Lawrence Township violated the New Jersey Civil Rights Act.

171     As a direct and proximate result of the false arrest, Plaintiff suffered and continues to suffer physical and psychological harm, pain and suffering, some or all of which may be permanent, and financial losses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court award Plaintiff compensatory damages, punitive damages, reasonable attorneys' fees and costs, prejudgment interest, and such other and further relief as may be just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial for all counts in the Complaint.

LANZA & LANZA LLP
Attorneys for Plaintiff

By_____
John R. Lanza, Esquire
ID#004831975
5 Main Street
P.O. Box 2520
Flemington, New Jersey 08822
(908) 782-2600
jrlanza@lanzaandlanza.com

Dated:  June 25, 2019

## LOCAL RULE 11.2 CERTIFICATION

Pursuant to Local Civil Rule 11.2, Plaintiff, through her attorneys, certifies that the matter in controversy in this action is not the subject of any action pending in any court or of any pending arbitration or administrative proceeding, except for a criminal matter that may be pending in Mercer County Superior Court under Indictment/Accusation Number 18-02-00074-I against Kenneth Edwards, who is listed as an inactive fugitive in that proceeding.

LANZA & LANZA LLP
Attorneys for Plaintiff

By_____
John R. Lanza, Esquire
ID#004831975
5 Main Street
P.O. Box 2520
Flemington, New Jersey 08822
(908) 782-2600
jrlanza@lanzaandlanza.com

Dated: June 25, 2019

33