John R. Lanza, Esq., Attorney No.: 004831975
**Lanza & Lanza LLP**
5 Main Street, P.O. Box 2520
Flemington, New Jersey 08822
(908) 782-2600
**Attorneys for Plaintiff**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| GEORGIA THOMPSON-EL, | : Civil Action No.: 3:19-cv-14253-ZNQ-TJB |
| Plaintiff, | : |
| v. | : **PLAINTIFF'S RESPONSE TO** |
| | : **LAWRENCE DEFENDANTS'** |
| GREEN BROOK TOWNSHIP, a | : **STATEMENT OF UNDISPUTED** |
| municipal corporation of New Jersey, | : **MATERIAL FACTS AND PLAINTIFF'S** |
| POLICE OFFICER ANTHONY PEPE, | : **SUPPLEMENTAL STATEMENT OF** |
| LAWRENCE TOWNSHIP, a municipal | : **DISPUTED MATERIAL FACTS** |
| corporation of New Jersey, POLICE | : **PURSUANT TO CIV. RULE 56.1** |
| OFFICER JOSEPH RADLINSKY and | : |
| John Does 1-99, | : |
| Defendants. | |

Pursuant to Local Rule 56.1 of the Local Rules of the United States District Court for the District of New Jersey, Plaintiff Georgia Thompson-el ("Plaintiff") responds, by and through undersigned counsel, to Defendants Lawrence Township and Joseph Radlinsky's ("Defendants") Statement of Undisputed Material Facts as set forth below.

**1.** "Plaintiff Georgia Thompson-el is a 41 year old black woman who was formerly known as 'Georgia Thompson' and was identified as Georgia Thompson during certain of the relevant times in this action."

**Plaintiff's Response:** Undisputed.

**2.** "Plaintiff alleges that she was 'caused … to be arrested and charged with multiple crimes without probable cause and with willful and reckless disregard as to whether [defendants] charged the right person with the alleged crimes.'"

**Plaintiff's Response:** Undisputed.

**3.** "Specifically, plaintiff alleges that the Lawrence Police Department and Detective Joseph Radlinsky caused charges to be brought against her for allegedly stealing credit cards from a customer of Zoe's Kitchen located in Lawrenceville, New Jersey on April 8, 2017."

**Plaintiff's Response**: Undisputed.

**4.** "Plaintiff alleges that the Lawrence Defendants authorized charges against her 'when a reasonable police officer would have known that there was no probable cause to conclude that Plaintiff was the criminal suspect and there was a high likelihood that they had misidentified the suspect in the crime.'"

**Plaintiff's Response:** Undisputed.

**5.** "Plaintiff further alleges that Detective Radlinsky 'knowingly and deliberately, or with a reckless disregard for the truth, through false statements or material omissions to the Grand Jury caused the Grand Jury to find probable cause to indict Plaintiff for the alleged crimes."

**Plaintiff's Response:** Undisputed.

**6.** "On April 8, 2017, at about 1:00 p.m. a man identified as P.L. had his credit cards stolen as he ate lunch at a restaurant called Zoe's Kitchen in Lawrenceville, New Jersey. P.L. believed that three Black persons sitting at a table near him were responsible for the theft."

**Plaintiff's Response**:   Plaintiff does not dispute that P.L. "said" that his credit cards were stolen and that he "did not see the person who had taken his credit cards.  He said he felt a bump and turned around."  Complaint, ¶ 46.

7.  "That same day at about 1:45 p.m., someone made three attempts to use P.L's credit cards at a Target store in South Brunswick, New Jersey."

**Plaintiff's Response:**  Undisputed.

8.  "P.L. contacted the Lawrence Police Department and described the suspects as '1 B/M and 1B/F middle aged and 1B/F mid 20's .'"

**Plaintiff's Response:**   Undisputed.

9.  "Lawrence Police Detective Joseph Radlinsky performed a follow up investigation of the theft of P.L.'s credit cards at Zoe's Kitchen."

**Plaintiff's Response:**  Undisputed.

10.   "Detective Radlinsky obtained and reviewed surveillance video and two still images from the Target store in South Brunswick of the persons who tried to use the victim's credit cards."

**Plaintiff's Response:**  Undisputed that Detective Radlinsky "reported" that he engaged in the above actions. Complaint ¶ 52.

11.   "Thereafter, Detective Radlinsky requested that the victim view the Target still images to see if they matched the persons at Zoe's Kitchen. The still images show a Black female wearing a white baseball cap, a dark jacket and blue jeans."

**Plaintiff's Response:**   Undisputed.   However, Detective Radlinsky also acknowledged at his deposition that he never showed the victim "a picture of Georgia Thompson."  Certification of John R. Lanza ("Lanza Cert., Exh. C 96:21-22).

**12.    First Sentence:** "While waiting to hear from the victim, Detective Radlinsky viewed a law enforcement alert bulletin posted by Officer Anthony Pepe of the Green Brook Police Department."

**Plaintiff's Response:**  Undisputed.

**Second Sentence:**  "The bulletin reported that on the same day as the theft at Zoe's Kitchen, several hours later a similar theft of credit cards by three Black persons occurred at a Bonefish Grill located in Green Brook New Jersey."

**Plaintiff's Response:**   Plaintiff disputes that the bulletin includes the quoted language. Plaintiff does not dispute that the bulletin reported a credit card theft of three Black persons at the Bonefish Grill in Green Brook, New Jersey on April 8, 2017.

**Third Sentence:**  "The bulletin stated that Green Book police obtained the license plate number for one of the suspects and the vehicle was registered to Georgia Thompson."

**Plaintiff's Response:**    The bulletin states: "Patrol were able to obtain a New Jersey registration bearing A31ELB which is registered to Georgia Thompson."   Plaintiff disputes the allegation to the extent that it is inconsistent with that quote. Epstein Cert., Exh. C.

**Fourth Sentence:**  "The bulletin further reported that the suspects attempted to use the stolen credit cards at Walmart and Target stores."

**Plaintiff's Response:**  Undisputed.

**Fifth Sentence:**  "The bulletin contained a photo of a Black female wearing a white baseball cap, a dark jacket and blue jeans."

**Plaintiff's Response:**  Undisputed.

**Sixth Sentence:**  "The bulletin identified Georgia Thompson as this suspect."

**Plaintiff's Response:**   Undisputed.

**Seventh Sentence:** "Additionally, Georgia Thompson's ex-husband, Douglass Thompson, was identified as a suspect."

**Plaintiff's Response:** Undisputed.

13.    "Detective Radlinsky recognized the Black female from the Bonefish Grill event as the same Black female suspect from the South Brunswick Target store as she was wearing the same clothing."

**Plaintiff's Response:**  Undisputed.

14.    "Detective Radlinsky testified that the Green Brook bulletin was 'crucial' to his investigation because up to this point in the investigation he had three unknown suspects."

**Plaintiff's Response:**  Plaintiff does not dispute that Defendant Radlinsky testified to the above.  Plaintiff does dispute that Defendant Radlinsky could find probable cause merely by relying on the bulletin without doing his own independent investigation.  Moreover, Detective Radlinsky testified that his purported finding of probable cause was based on his own investigation, not Officer Pepe's identification.   Lanza Cert., Exh. C, pg. 106.   In addition, Detective Radlinsky never viewed the Green Brook surveillance images or video upon which Officer Pepe claimed to have made his identification.  Lanza Cert., Exh. C, 61:4-5.

15.    **First Sentence:**   "Defendant Radlinsky contacted Officer Pepe as part of his investigation."

**Plaintiff's Response:**  Undisputed.

**Second Sentence:**   "Officer Pepe reported that he identified Georgia Thompson as a suspect in this case with '100% certainty' after comparing [her] New Jersey driver's license photo to his surveillance video.'"

5

**Plaintiff's Response**:    Plaintiff does not dispute that this statement is made in Officer

Radlinsky's report, but disputes the truth of Officer Pepe's statement.    Lanza Cert. Exh. F (DMV

photo of Plaintiff); Exh. J (surveillance images from Bonefish Grill); Exh. M (alert bulletin photos)

and Certification of John R. Lanza With Regard to Videos and Photographs Submitted on DVD

["Lanza DVD Cert."] (first, third and fourth folders with images and videos produced by Green

Brook).    Plaintiff disputes that Officer Radlinsky could find probable cause against Plaintiff based

on this statement.    Moreover, at his deposition, Officer Radlinsky testified as follows:

> Q: [John Lanza]:  All right.    You also asked Officer Pepe about his identification?
> A. [Officer Radlinsky]:  Yes I did.
> Q. And what did he respond?
> A. He stated he identified her with, quote, 100 percent certainty.
> Q. And what did he base that on?
> A. I'm assuming he based it – I don't know.
> Q. No, I'm just going from your report.
> A. Oh.
> Q.  What you stated after that.
> A. Based on her driver's license photo and his comparison to his video.
> Q. Okay.
> A.  **I did not know what his video entailed.**
> Q. Did you after look at his videos?
> A. **No I did not**.

Lanza Cert., Exh. C, 61:12 to 62:5 (emphasis added).    Officer Pepe did not recall stating he

identified Plaintiff with 100% certainty."    Lanza Cert., Exh. B, pp. 101-02.

**Third Sentence:**  "Officer Pepe also reported that he compared the driver's license photo

of Douglass Thompson to his surveillance video and concluded that Douglass Thompson was his

male suspect."

**Plaintiff's Response:**  Plaintiff does not dispute that Officer Pepe made this statement or

that Officer Radlinsky's report made this statement.    Plaintiff does dispute the truth of Officer

Pepe's statement.  Compare Lanza Cert. Exh. H with Exh. J.  Douglass Thompson was not even

6

at the Bonefish Grill on the night in question. Lanza Cert., Exh. A, 44:8-10. Plaintiff further notes that Officer Radlinsky concluded that the male suspect was *not* Douglass Thompson.

**16. First Sentence**. "Detective Radlinsky independently compared Georgia Thompson's driver's license photo to the surveillance video from the Target store and confirmed that the female with the white baseball cap was Georgia Thompson."

**Plaintiff's Response:** Disputed. Detective Radinsky could not have confirmed that the "female with the white baseball cap was Georgia Thompson" because it was not. Ms. Thompson was not at the Target store in the date in question. Lanza Cert., Exh. A, 92:11-13. The video from the Target store was not clear enough for Officer Radlinsky to make that identification, and Georgia Thompson's face does not resemble the face of the person in the video, except that they are both black. Lanza Cert. Exh. P and Lanza DVD Cert. Folder: Target Afternoon Photos Videos. Officer Radlinsky did not even try to contact Ms. Thompson to see her in person so that he could see what she looked like in person. He did not even ask her, or seek confirmation, as to whether she had been in Lawrence Township or at the North Brunswick Target on the date in question. At his deposition, he testified as follows:

> Q. [John Lanza] Now, if you – were you able – would have ... been able to contact Ms. Thompson by telephone to talk to her?
> A. [Officer Radlinsky]: Yes.
> Q. Well, Officer Pepe had her phone number, correct?
> A. I could have asked him for it. Yes.
> Q. But you never did that?
> A. No.
> Q. You could have gone to her home, correct?
> A. I – I don't – I could have asked permission to go to – to her home being out of township. Yes, I could have asked.
> Q. Could you have requested a local police officer from Scotch Plains to approach Ms. Thompson and to advise her that you would be contacting her either by telephone or in some other fashion?
> A. Yes.
> Q. Did you do that?
> A. No, I did not.

Lanza Cert., Exh. C, 62:23 to 63:20.    When Detective Radlinsky issued his own alert bulletin, he said the female suspect was "tentatively" identified as Ms. Thompson-el.  Lanza Cert., Exh. C, 88:10-19 and Exh. N.

**Second Sentence:** "Detective Radlinsky testified that his identification 'was based on the shape of her face, the shape of her nose, her lips, anything that I could see below the eyebrows because the brim of her hat comes done.'"

**Plaintiff's Response:**  Plaintiff does not dispute that Officer Radlinsky gave this testimony at his deposition, but Plaintiff disputes the truth of the statement or that it was sufficient for a photo identification.  Lanza Cert., Exh. F (DMV photo) and Exh. P and Lanza DVD Cert. Folder: Target Afternoon Photos Videos.  Officer Radlinsky also said he was "a hundred percent certain" that the suspect was Ms. Thompson when he signed the complaint, which could not possibly have been true.  Lanza Cert., Exh. C, 75:22-23.    Moreover, the testimony quoted above is an acknowledgment that Detective Radlinsky could not clearly see Plaintiff's face.

17.    "Detective Radlinsky also independently compared Douglass Thompson's driver's license photo to the surveillance video from the Target store and concluded that he was unable to determine with certainty that Douglass Thompson was the Black male in the Target video."

**Plaintiff's Response:**  Undisputed.  Moreover, this should have caused Officer Radlinsky to question Officer Pepe's assertions that he was 100% certain that Douglass Thompson and Georgia Thompson were the persons in the video.

18.  "Thereafter, on April 27, 2017, Detective Radlinsky met with the victim of the Zoe's Kitchen theft and the victim positively identified from the Target still image the Black female

wearing the white baseball cap as one of the Black females involved in the incident at Zoe's Kitchen."

**Plaintiff's Response:** Disputed. This is Officer Radlinsky's self-serving statement and is hearsay.    There is no way to confirm what the victim said or was shown by Officer Radlinsky. Officer Radlinsky did not keep a record of the identification procedure, of the photographs shown, or of the victim's response, in violation of the Attorney General Guidelines and New Jersey Court Rule 3:11. Lanza Cert. S, T.   These Guidelines and Rule 3:11 require a law enforcement officer to make a record of an out-of-court identification, in a video or audio format, and to provide relevant details of how the identification took place.   There is no record of the identification procedure, except for Radlinsky's statements in the report.   Moreover, the victim was *never shown a photograph of Georgia Thompson.*  Radlinsky admits this:

> Q. [John R. Lanza]  At that time, did you exhibit to Mr. Lyneborg the P-23, the photo of Ms. Thompson?
> A. [Radlinsky]: P-23?  Driver's license photo, no.
> Q. So Mr. Lyneborg never identified P-23 or Ms. Thompson directly as being the woman that he referred to as one of the suspects?
> A. No.  My purpose of having him view the – the people, suspects in this case from the surveillance – stills taken from the surveillance video was to corroborate his description of the people who were in the restaurant at the time that his wallet was stolen."

Lanza Cert., Exh. C, 83:25 to 84:11.

**19.**  "On June 8, 2017, Detective Radlinsky completed a Complaint-Summons against Georgia Thompson, charging her with violating N.J.S.A. 2C:203A (theft of movable property, a disorderly persons offense) and N.J.S.A. 2C:21-6C(1) (credit card theft, a fourth degree crime.")

**Plaintiff's Response**: Undisputed.

**20.**  "As part of the criminal complaint, Detective Radlinsky signed an Affidavit of Probable Cause."

**Plaintiff's Response:** Undisputed. Moreover, the Affidavit of Probable Cause stated "Victim witnessed Defendant and Co-Defendant at the time that his wallet was stolen." Feinstein Cert., Exh. I, LT0000045. This statement was false because the victim was never shown Plaintiff's photo.

**21.** "On February 1, 2018, Detective Radlinsky testified before the Mercer County Grand Jury."

**Plaintiff's Response:** Undisputed.

**22.** "Plaintiff asserts that Detective Radlinsky 'omitted material exculpatory facts from his Grand Jury testimony.'"

**Plaintiff's Response:** Undisputed. Detective Radlinsky's false statements and omissions are not limited to grand jury testimony. The Affidavit of Probable Cause stated "Victim witnessed Defendant and Co-Defendant at the time that his wallet was stolen." Feinstein Cert., Exh. I, LT0000045. This statement was false because the victim was never shown Plaintiff's photo and was intended to mislead the prosecutor into believing that the victim had identified Plaintiff as the person who stole his credit cards.

**23.** "First, plaintiff states that it was 'false and misleading' for Detective Radlinsky to answer affirmatively to the Prosecutor's question that 'it was also determined through the Green Brook Police Department that the vehicle used in their offense was registered to Georgia Thompson, correct?'"

**Plaintiff's Response:** Undisputed.

**24.** Specifically, plaintiff asserts that this testimony "led the Grand Jury to believe that the Green Brook Police had evidence that Plaintiff's car was used in the alleged offenses. He failed to reveal to the Grand Jury that no one on the Green Brook matter had actually witnessed the

10

alleged theft, and that there was no explanation for why the unnamed Bonefish Grill employee wrote down the license plate of Plaintiff's car."

**Plaintiff's Response:**    Undisputed.

25.  "Second, plaintiff asserts that Detective Radlinsky's testimony that the Green Brook Police had a video that showed the rear license plate of Plaintiff's vehicle was false and misleading."

**Plaintiff's Response:**    Undisputed.

26.  "Third, plaintiff asserts that the surveillance images from the South Brunswick target 'did not show a clear image of the suspect's face and the still photograph was far too blurry for [Detective] Radlinsky to match Plaintiff to those images."

**Plaintiff's Response:**    Undisputed.

27.    "Fourth, plaintiff claims that Detective Radlinsky's testimony that the victim 'positively identified Georgia Thompson as the woman behind him at Zoe['s] Kitchen' was the result of a flawed identification procedure.'"

**Plaintiff's Response:**    Undisputed.  The testimony that the victim identified  Georgia Thompson as the woman sitting behind him was simply false, as the victim never identified Georgia Thompson.   Detective Radlinsky admitted that his grand jury testimony was false.  Lanza Cert., Exh. C, 98:7-11.

28.  "On February 1, 2018, the Mercer County Grand Jury indicted Plaintiff for credit card theft in violation of N.J.S.A. 2C:21-6(C)(1)."

**Plaintiff's Response:**    Undisputed.

29.    "Plaintiff was ordered to appear in Mercer County at a post indictment arraignment on February 20, 2018."

**Plaintiff's Response:** Undisputed.

**30.** "Due to plaintiff's failure to appear at the post indictment arraignment, a level III bench warrant was issued. Additionally, the arraignment was rescheduled to March 12, 2018."

**Plaintiff's Response:** Plaintiff does not dispute that the bench warrant was issued, but disputes that the warrant would have been issued if not for Detective Radlinsky's investigation, initiation of charges, and false and misleading statements. Without Detective Radlinsky's biased, factually deficient and unconstitutionally issued criminal charges, there would have been no required court appearances. The case was initiated in the Lawrence Township Municipal Court, where Plaintiff appeared several times asserting her innocence of the charges. Lanza Cert., Exh. A, 102:9-15; 104:5-8; 105:19-25 to 106:3. A grand jury indictment was sought after Plaintiff kept protesting her innocence. Plaintiff asked for an adjournment, which was received by the court after the warrant had been issued. Lanza Cert., Exh. A, 109:18 to 110:4.

**31.** "Plaintiff was aware of her indictment in Mercer County and submitted at least one request for a continuance of her arraignment. Upon information and belief, she did not appear."

**Plaintiff's Response:** Disputed that Plaintiff was aware of and understood what an indictment was. Lanza Cert., Exh. A, 111:7-8. Except as stated, undisputed.

**32.** "Plaintiff was also indicted in Somerset County for the theft committed at the Bonefish Grill, and a bench warrant was issued by Somerset County."

**Plaintiff's Response:** Undisputed.

**33.** "On April 4, 2018, during the course of a motor vehicle stop in Berkeley Heights New Jersey, plaintiff was arrested on the Somerset County and Mercer County bench warrants."

12

**Plaintiff's Response:** Disputed that the Somerset County warrant was a bench warrant, as a warrant-complaint was filed and a warrant was requested under Somerset County Prosecutor's screening memo. Green Brook Brief, Exh. D.

**34.** "On October 15, 2018, the Mercer County charges were dismissed against Plaintiff."

**Plaintiff's Response**: Undisputed.

## SUPPLEMENTAL STATEMENT OF DISPUTED MATERIAL FACTS

Pursuant to Local Civil Rule 56.1(a), Plaintiff submits the following supplemental statement of disputed material facts. Plaintiff also refers to her brief for additional clarification of the facts.

1. The photograph of the female suspect leaving the Target in North Brunswick, New Jersey on April 8, 2017 did not show a clear image of her face and was not sufficiently clear for Detective Radlinsky to identify her as Georgia Thompson-el   Lanza Cert., Exh. F and Exh. P.  Lanza DVD Cert. Folder: Target Afternoon Photos Videos.

2. Detective Radlinsky was not truthful when he testified that he identified Plaintiff as suspect with 100% certainty or any degree of certainty.   Lanza Cert., Exh. C, 75:17-24.

3. Detective Radlinsky knew that Officer Pepe's identification of the suspects in the Green Brook theft was not reliable, as Detective Radlinsky concluded that Officer Pepe misidentified the male suspect.     Lanza Cert., Exh. C, 77:4-16; Feinstein Cert. Exh. G, Lanza Cert. Exh. I.

4. Detective Radlinsky chose not to show the victim Plaintiff's DMV photo because the victim might have said that he could not identify Plaintiff or match her DMV photo to the Target surveillance images. Lanza Cert. Exh. C 83:25-84:11.

5.    Detective Radlinsky knew that the statement in his Affidavit of Probable Cause that "Victim witnessed Defendant and Co-Defendant at the time that his wallet was stolen" was misleading and would be misinterpreted by the prosecutor.  Lanza Cert. Exh. C 97:24 to 98:11.

6.    Detective Radlinsky acknowledged that his testimony to the grand jury was false Lanza Cert., Exh. C 97:24 to 98:11.

7.    Detective Radlinsky has a racial bias against black people. Lanza Cert. Exh. C pp. 10-15 and pp. 15-18.    There are two incidents or complaints against him involving inappropriate language or insensitive behavior regarding blacks.   Id.

8.    The Lawrence Police Department instituted quotas for issuing tickets, warrants and complaints in order to raise revenue for the Township.  Lanza Cert., Exh. U.

9.    Lawrence Township Police Officers alleged in a lawsuit that the "Township systematically used ordinance plea deals for criminal and motor vehicle offenses in order to promote revenue." Lanza Cert. Exh. U, pg. 8.

10.    Plaintiff would not have been jailed in Mercer County if not for Detective Radlinsky's representations to the Mercer County prosecutor in his reports and Affidavit of Probable Cause that she was identified from store surveillance images and identified by the victim as the thief.

11. The only connection between the suspects and Ms. Thompson-el was their race and nothing else.    Racial discrimination played a prominent role in Detective Radlinsky's failure to apply standard investigation methods to make false reports and misrepresentations.


Lanza & Lanza LLP
Attorneys for Plaintiff, Georgia Thompson-El


By:_____
    John R. Lanza, Esquire

Dated: May  /I  , 2022

15