<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| GEORGIA THOMPSON-EL, <br><br> Plaintiff, <br><br> v. <br><br> TOWNSHIP OF GREEN BROOK, *et al.*, <br><br> Defendants. | Civil Action No. 19-14253 (GC) (TJB) <br><br> <u>**OPINION**</u> |

<u>**CASTNER, District Judge**</u>

      **THIS MATTER** comes before the Court upon Defendants'—Lawrence Township's and Detective Joseph Radlinsky's (Lawrence Defendants)—Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure (Rule) 56.[1]  (ECF No. 32.)  Plaintiff Georgia Thompson-El opposed.  (ECF No. 39.)  Defendants replied.  (ECF No. 42.)  The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Rule 78(b) and Local Civil Rule 78.1(b).  For the reasons set forth below, and other good cause shown, the Motion for Summary Judgment is **GRANTED**.

**I.**      <u>**BACKGROUND**</u>

    **A. Procedural Background**

      On June 26, 2019, Plaintiff brought suit against Lawrence Township and Detective Joseph Radlinsky of the Lawrence Township Police Department (LTPD).  (ECF No. 1.)  Plaintiff alleges

---

[1]     Defendants Green Brook Township and Officer Anthony Pepe of the Green Brook Police Department (Green Brook Defendants) also filed a motion for summary judgment.  The Court has issued a separate decision as to those Defendants.

1

that she was "arrested and charged with multiple crimes without probable cause and with willful and reckless disregard as to whether [Defendants] had charged the right person with the alleged crimes." (*Id.* at 5.[2])

Plaintiff asserts seven claims against Defendants: (1) unlawful arrest and imprisonment against Detective Radlinsky in violation of 42 U.S.C. § 1983 (Count VIII)[3]; (2) malicious prosecution against Detective Radlinsky in violation of § 1983 (Count IX); (3) municipal liability against Lawrence Township in violation of § 1983 (Count X); supervisory liability against "Lawrence John Doe Defendant" in violation of § 1983 (Count XI); false arrest and false imprisonment in violation of state law (Count XII); malicious prosecution in violation of state law (Count XIII); and violations of the New Jersey Civil Rights Act (NJCRA), N.J. Stat. Ann. § 10:6-2 *et seq.* (Count XIV). (ECF No. 1.)

## B. Statement of Facts[4]

### 1. Theft at Zoe's Kitchen

On April 8, 2017, at approximately 1:00 p.m., a man identified as P.L. had his credit cards stolen as he ate lunch at Zoe's Kitchen, a restaurant located in Lawrenceville, New Jersey. (Defs. SMF ¶ 6; Pl. SMF ¶ 6.) On that same day, at approximately 1:45 p.m., someone made three attempts to use P.L.'s credit cards at a Target located in South Brunswick, New Jersey. (*Id.* ¶ 7.)

---

[2]     Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

[3]     The Court has jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

[4]     The factual circumstances surrounding this action, as revealed through discovery, are set forth in the parties' submissions in accordance with Local Civil Rule 56.1. (*See* "Defs. SMF", ECF No. 32-1; "Pl. SMF", ECF No. 39-1.) Any disagreements amongst the parties as to the timing or characterization of certain aspects of the incident in question are noted for clarity where necessary and appropriate.

P.L. contacted the Lawrence Police Department and described the incident to Officer Bruce B. Miller.  (ECF No. 32-2.)  P.L. told Officer Miller that he felt his jacket moving, and when he turned around, "he observed the three suspects sitting at a table and asked what was going on." (*Id.*)  The three suspects told P.L. that he could search their bags, but he declined and left shortly after.  (*Id.*)  P.L. described the three suspects as a black female in her mid-20's, a middle-aged black female, and a middle-aged black male.  (*Id.*)  Thereafter, the LTPD began an investigation into the incident.

### 2.  *Lawrence Investigation*

Detective Radlinksy for the LTPD conducted the investigation into the theft of P.L.'s credit cards at Zoe's Kitchen. (Defs. SMF ¶ 9; Pl. SMF ¶ 9.)  Detective Radlinsky's investigation is set forth in the Lawrence Police's Supplemental Narrative dated April 13, 2017, as modified and approved on June 12, 2017.  (ECF No. 32-2 Ex. G at 57-62.)

On April 13, 2017, Detective Radlinsky went to Zoe's Kitchen to locate any surveillance videos or persons who may have witnessed the event.  (*Id.* at 58.)  No such videos or witnesses were located.  (*Id.*)  On April 17, 2017, Detective Radlinsky went to the South Brunswick Target and obtained surveillance footage and two still images of the persons who had attempted three transactions using P.L.'s credit cards. (Defs. SMF ¶ 10; Pl. SMF ¶ 10.)  The still images taken from the Target surveillance video, (ECF No. 32-2 Ex. G at 51-53), showed a Black female wearing a white baseball cap, a dark jacket, and blue jeans.  (Defs. SMF ¶ 11; Pl. SMF ¶ 11.) Detective Radlinsky then contacted P.L. to request he view the Target still images to see if they matched the individuals at Zoe's Kitchen.  (*Id.*)

While awaiting P.L.'s response, Detective Radlinsky viewed an online alert bulletin posted by Officer Anthony Pepe from the Green Brook Police Department (GBPD).  (Defs. SMF ¶ 12;

Pl. SMF ¶ 12.)  The Green Brook Bulletin was related to an alleged theft by three Black persons at the Bonefish Grill in Green Brook, New Jersey, on April 8, 2017, the same day as the Zoe's Kitchen theft.  (ECF No. 32-2 Ex. C at 42-43.)  The Green Brook Bulletin provided additional information related to the incident at the Bonefish Grill and the Green Brook investigation. Specifically, Officer Pepe obtained a New Jersey license plate number for a vehicle registered to Plaintiff.  (*Id.*)  The Green Brook Bulletin further reported that the suspects attempted to use the stolen credit cards at a Walmart and Target located in Watchung, New Jersey.  (*Id.*)  The Green Brook Bulletin contained a photo of a Black female wearing a white baseball cap, a dark jacket, and blue jeans.  (*Id.*)  Detective Radlinsky recognized the Black female suspect from the Bonefish Grill incident as the same Black female suspect from the South Brunswick Target surveillance video because she was wearing the same clothing. (ECF No. 32-2 Ex. G at 57-62.)  Detective Radlinsky also recognized the male suspect in the photos as the same male involved in his own investigation.  (*Id.*)  The Green Brook Bulletin identified two of the three suspects as Georgia Thompson and Georgia Thompson's ex-husband, Douglass Thompson.  (*Id.*)

Detective Radlinsky testified that the Green Brook Bulletin was "crucial" to his investigation because he had not identified any of the three suspects prior to receiving it.  (ECF No. 32-2 Ex. D at 53:18-25.)  Thereafter, Detective Radlinsky contacted Officer Pepe and summarized their conversation in his report as follows:

> Officer Pepe, after determining the ownership of the suspect vehicle, contacted Georgia Thompson via phone.  He advised her as to the nature of his call to which she responded that she knew nothing about her vehicle being used in a crime.  When Officer Pepe asked her to come to his police department, Georgia Thompson refused and said she did not know anything about the incident that he was investigating.  She refused to answer any further questions and Officer Pepe concluded his phone interview with her.

I asked Officer Pepe about his identification of Georgia Thompson and he stated that he identified her with "100% certainty" after comparing Georgia Thompson's New Jersey driver's license photo to his surveillance video.

Officer Pepe explained to me that after he became aware of the suspect's vehicle registered to Georgia Thompson, he checked the motor vehicle history of the vehicle in an attempt to locate any tickets issued to the vehicle. Officer Pepe located a motor vehicle summons that was issued to Douglass Thompson after he was stopped operating the suspect vehicle. He then viewed the driver's license for Douglass Thompson and compared it the surveillance video from his incident. He determined that Douglass Thompson was the male in the surveillance video from the incident in Green Brook.

[(ECF No. 32-2 Ex. G at 57-62.) [5]]

Detective Radlinsky testified at his deposition that he never reviewed the Green Brook surveillance video upon which Officer Pepe had made his identifications of Plaintiff and Douglass Thompson. (ECF No. 32-2 Ex. D at 62:2-5.) In both his deposition and supplemental narrative, Detective Radlinsky stated that, independent of Officer Pepe's findings, he compared Plaintiff's driver's license photo, (ECF No. 32-2 Ex. H at 63-64), to the surveillance video from the South Brunswick Target, (ECF No. 32-2 Ex. E at 51-53), and confirmed that the female with the white baseball cap was Plaintiff. (ECF No. 32-2 Ex. D at 106:10-15.) Detective Radlinsky testified that his identification "was based on the shape of her face, the shape of her nose, her lips, anything that I could see below the eyebrows because the brim of the hat comes down." (*Id.* at 75:12-23.) With respect to Douglass Thompson, Detective Radlinsky also independently compared Thompson's driver's license photo to the South Brunswick Target surveillance video and concluded that he was

---

[5]    Plaintiff disputes the truth of Officer Pepe's statements as summarized by the Lawrence Supplemental Narrative. (Pl. SMF ¶ 15.)

unable to determine with "100% certainty" that Douglass Thompson was the Black male in the South Brunswick Target video.  (ECF No. 32-2 Ex. G at 57-63.)

On April 27, 2017, Detective Radlinsky met with P.L., the victim of the Zoe's Kitchen theft, and showed P.L. the still images from the South Brunswick Target's surveillance video (ECF No. 32-2 Ex. E at 51-53).  (*See* ECF No. 32-2 at 57-63.)  From those images, P.L. identified the Black female wearing the white baseball cap as one of the Black female suspects that sat behind him at Zoe's Kitchen.  (*Id.*)  Detective Radlinsky testified at his deposition that he "never showed [P.L.] a picture of Georgia Thompson."  (ECF No. 32-2 Ex. D at 96:21-22.)  Specifically, Detective Radlinsky testified as follows:

> Q.  At that time, did you exhibit to [P.L.] the P-23, the photo of Ms. Thompson?
>
> A.  P-23? Driver's license photo, no.
>
> Q.  So [P.L.] never identified P-23 or Ms. Thompson directly as being the woman that he referred to as one of the suspects?
>
> A.  No. My purpose of having him view the—the people, suspects in this case from the surveillance—stills taken from the surveillance video was to corroborate his description of the people who were in the restaurant at the time that his wallet was stolen.

[(*Id.* at 83:25 to 84:11.)[6]]

---

[6]     Plaintiff disputes Detective Radlinsky's description of his meeting with the victim.  (Pl. SMF ¶ 18.)  Detective Radlinsky did not keep a record of the identification procedure, of the photographs shown, or of the victim's response.  (*See* ECF No. 32-2 Ex. D at 82:15-16.)  Policies and procedures adopted by the LTPD require a law enforcement officer to make a record of an out-of-court identification, in a video or audio format, and to provide relevant details of how the identification took place.  (*See* ECF No. 38-3 at 4-13, 15-26.)  There is no record of the identification procedure, except for email correspondence between Detective Radlinsky and P.L. setting up the meeting and Detective Radlinsky's statements in the report.  (ECF No. 32-2 at 61.)

The Lawrence Supplemental Narrative thus concludes, "[b]ased on the totality of circumstances, probable cause was determined to charge Georgia Thompson" with "1 Count of Theft of Movable Property" and "1 Count of Credit Card Theft." (ECF No. 32-2 Ex. G at 61.) In his deposition, Detective Radlinsky testified that there was probable cause based on surveillance videos, surveillance images, and his identification of Plaintiff through her driver's license photograph and surveillance still images as compared to Officer Pepe's identification of Plaintiff from the Green Brook investigation. (ECF No. 32-2 Ex. D at 85:8-17.)

Plaintiff denies any involvement in the theft at Zoe's Kitchen and denies ever being in Lawrence Township. (ECF No. 38-1 Ex. A at 92:5-10.) Plaintiff asserts that on April 8, 2017, she was at a medical facility in North Plainfield from approximately 11:00 a.m. to 12:00 p.m., and then went home for a few minutes before heading to Home Depot. (*Id.* at 35:21-37:7.) After leaving Home Depot at around 12:30 p.m., Plaintiff visited her babysitter's house in Union to drop off soil, leaving there at around 12:45 p.m. (*Id.* at 37:8-15.) Subsequently, Plaintiff went shopping at multiple stores in East Orange, Union, and Watchung from approximately 12:45 p.m. to 4:45 p.m. before returning home to Scotch Plains. (*Id.* at 37:16-40:8.) Plaintiff then drove to the Bonefish Grill in Green Brook where she had dinner with her friend Junior Hamilton and her boyfriend for approximately two hours. (*Id.* at 40:9-47:6.) Following dinner, Plaintiff went to a Costco Gas Station and then returned home. (*Id.* at 46:25-47:6.)

### 3.  *Charges Against Plaintiff and Grand Jury Indictment*

On June 8, 2017, Detective Radlinsky prepared a Complaint-Summons against Plaintiff, charging her with theft of movable property, N.J. Stat. Ann. § 2C:203A, and credit card theft, N.J. Stat. Ann. § 2C:21-6(c)(1). (ECF No. 32-2 Ex. I at 66-76.) As part of the criminal complaint,

Detective Radlinsky signed an affidavit of probable cause.  (*Id.* at 74-75.)  Detective Radlinsky's affidavit states the following:

> The Defendant, along with her co-defendant (Edwards), did remove the victim's wallet from his jacket pocket while he dined at a restaurant in the jurisdiction of Lawrence Township.  The Defendant and co-defendant then used the victim's credit card to purchase merchandise from the Target store in South Brunswick[,] New Jersey.
>
> Investigation conducted by the complainant.  Victim witnessed defendant and co-defendant at the time that his wallet was stolen.
>
> [(*Id.* at 75.)]

After Plaintiff received the complaint-summons by mail, she appeared, without an attorney, in Lawrence Township Municipal Court in June 2017.  (ECF No. 38-1 Ex. A at 99:18-102:12.)  Plaintiff appeared in court twice more in July and August 2017.  (*Id.* at 104:1-106:15.)

On February 1, 2018, Detective Radlinsky testified before the Mercer County Grand Jury. (ECF No. 32-2 Ex. J at 78-94.)  There, he testified, in part, as follows:

> Q. So you -- and then the victim in this case positively identified Georgia Thompson as the woman that was sitting behind him at Zoe[']s Kitchen?
>
> A. That's correct.
>
> . . .
>
> A. So, we had not gained an [identity] of that male.  But when I showed him the picture of Georgia Thompson, he said that's the woman that said I could search her bags, she was seated behind me.
>
> [(*Id.* at 88-90.)]

When Detective Radlinsky was asked about these grand jury statements at his deposition, Detective Radlinsky testified as follows:

> Q.  Okay. Sir, what you in these two answers stated or testified that [P.L.] identified Georgia Thompson as the woman in Zoe's Kitchen that he saw, correct?
>
> A.  Yes.
>
> Q.  But you never showed him a picture of Ms. -- Ms. Thompson, correct?
>
> A.  Correct.
>
> Q.  So[,] he never, even identified Ms. Thompson as that woman, correct?
>
> A.  No.
>
> Q.  So that's false, right?
>
> Q.  Yes.
>
> [(ECF No. 32-2 Ex. D at 95:24-96:1-11.)]

On February 1, 2018, the Mercer County Grand Jury indicted Plaintiff for credit card theft in violation of N.J. Stat. Ann. § 2C:21-6(c)(1).  (Defs. SMF ¶ 28.)[7]  As a result, on February 7, 2018, Plaintiff was ordered to appear in Mercer County for an arraignment on February 20, 2018.

### 4.  *Bench Warrant, Arrest, and Dismissal of Charges*

Plaintiff failed to appear at her arraignment, and as a result a bench warrant was issued on February 21, 2018.  (ECF No. 32-2 Ex. L at 98.)  After the court issued a bench warrant, Plaintiff sent the court a letter requesting an adjournment.[8]  (*Id.*)

---

[7]    Plaintiff was also indicted in Somerset County for the theft at the Bonefish Grill that was described in the Green Brook Bulletin.  (Defs. SMF ¶ 32.)  There, a complaint-warrant was filed, and a separate warrant was requested by the Somerset County Prosecutor's office.  (Pl. SMF ¶ 33.)

[8]    Plaintiff received a letter in the mail notifying her of the warrant, but she testified in her deposition that she did not receive a copy of the warrant itself.  (ECF No. 32-2 at 112:8-21.)

On April 4, 2018, during a motor vehicle stop in Berkeley Heights, Plaintiff was arrested pursuant to the Somerset County warrant and the Mercer County bench warrant. (Defs. SMF ¶ 33.) Plaintiff spent eight days at the Somerset County jail before she was transferred to the Mercer County jail, where she stayed until she was released on April 16, 2018. (ECF no. 32-2 at 113:1-115:10.) On October 15, 2018, the Mercer County charges were dismissed against Plaintiff. (Defs. SMF ¶ 34.)

## II.    LEGAL STANDARD

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* When deciding the existence of a genuine dispute of material fact, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. The Court must grant summary judgment if any party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "[I]nferences, doubts, and issues of credibility should be resolved against the moving party." *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n.2 (3d Cir. 1983).

III.    **DISCUSSION**

A.    **Section 1983 Claims for Unlawful Arrest and Imprisonment (Count VIII) And Malicious Prosecution (Count IX)**

"By its terms, . . . [§ 1983] creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere." *Castro v. New Jersey*, 521 F. Supp. 3d 509, 517 n.6 (D.N.J. 2021) (quoting *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).  To state a claim under § 1983, a plaintiff must establish that (1) the conduct deprived her of her rights, privileges, or immunities secured by the Constitution or laws of the United States and (2) the conduct challenged was committed by a person acting under color of state law.  *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *Schneyder v. Smith*, 653 F.3d 313, 319 (3d Cir. 2011); *Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 146 (3d Cir. 2005).

Plaintiff asserts that Detective Radlinsky's conduct violated her rights under the Fourth and Fourteenth Amendment based on (1) unlawful arrest and imprisonment and (2) malicious prosecution.  Plaintiff alleges that her arrest and prosecution were due to Detective Radlinsky accusing her of theft without following proper photo identification procedures or conducting the most minimally competent investigation.  (ECF No. 39 at 8.)

To bring a claim for false arrest, a plaintiff must establish "(1) that there was an arrest; and (2) that the arrest was made without probable cause." *James v. City of Wilkes-Barre*, 700 F.3d 675, 680 (3d Cir. 2012).  A claim for false imprisonment arises when a person is arrested without probable cause and is subsequently detained pursuant to that unlawful arrest. *See Adams v. Officer Eric Selhorst*, 449 F. App'x 198, 201 (3d Cir. 2011) (citations omitted).  In other words, a claim of false imprisonment in this context is derivative of a claim for arrest without probable cause. *See Johnson v. Camden Cnty. Prosecutors' Off.*, Civ. No. 11-3588, 2012 WL 273887, at *4 n.2 (D.N.J. Jan. 31, 2012) (citations omitted).

"To prove malicious prosecution under section 1983, a plaintiff must show that: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiffs favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing a plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003) (citation omitted).

In moving for summary judgment with respect to the § 1983 claims against Detective Radlinsky, the Lawrence Defendants primarily argue that the bench warrant provided probable cause for and proximately caused Plaintiff's arrest.  (ECF No. 32-1.)

### 1. *Probable Cause for Plaintiff's Arrest*

The Fourth Amendment prohibits police from making an arrest except "upon probable cause, supported by Oath or affirmation."  U.S. Const. amend. IV.  "Probable cause exists if there is a 'fair probability' that the person committed the crime at issue."  *Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000) (quoting *Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d Cir. 1997)).  Put another way, "probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested."  *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995).  Importantly, "summary judgment for false arrest and false imprisonment is proper only if no reasonable juror could find a lack of probable cause for any of the charged crimes."  *Harvard v. Cesnalis*, 973 F.3d 190, 199 (3d Cir. 2020); *Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995).  Although, generally, "the question of probable cause in a section 1983 damage suit is one for the jury," *Montgomery v. De Simone*, 159 F.3d 120, 124 (3d Cir. 1998), a district court may conclude "that probable cause did exist as a matter of law if

the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding," and may enter summary judgment accordingly.  *Estate of Smith v. Marasco*, 318 F.3d 497, 514 (citing *Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d Cir. 1997)).

Here, the Complaint alleges that Detective Radlinsky "caused the initiation of criminal charges against Plaintiff without probable cause, and acted with reckless indifference as to whether Plaintiff was the person who committed the alleged crimes."  (ECF No. 1 ¶ 154.)  Further, the Complaint contends that Detective Radlinsky's conduct, including the initiation of charges and his grand jury testimony, caused Plaintiff to be arrested and confined in jail.  (*Id.* ¶ 155.)  In opposition, Defendants argue that Plaintiff's arrest was effectuated pursuant to a valid warrant. (ECF No. 32 at 13-23.)

The United States Court of Appeals for the Third Circuit has held that where a plaintiff is arrested pursuant to a bench warrant issued due to their failure to appear, probable cause exists for the arrest and thus there is no Fourth Amendment violation.  *See Johnson v. Provenzano*, 646 F. App'x 279, 281 (3d Cir. 2016); *see also In re Grand Jury Proceedings Harrisburg Grand Jury 79-1*, 658 F.2d 211, 214 (3d Cir. 1981) ("The simple fact of nonappearance provided the government with probable cause to apply for a bench warrant.").  "When a defendant is named in a bench warrant, probable cause for arrest exists, and any Fourth Amendment argument arising out of the arrest is without merit even if the bench warrant later turns out to be invalid." *Jones v. Gloucester Cty.*, Civ. No. 08-614, 2009 WL 10727989, at *6 (D.N.J. Sept. 30, 2009) (citations omitted).

Here, the court issued the bench warrant because Plaintiff did not appear at her arraignment. (ECF No. 32-2 Ex. L at 98) ("[B]ased upon *your failure to appear at the court's post indictment arraignment conference* scheduled on Monday, February 20th, 2018[,] at 9:00 am before the

13

Honorable Robert Bingham II, a level III bench warrant was issued.") (emphasis added).  Plaintiff admits she received the letter advising her of the date of the post indictment arraignment, (ECF No. 38-1 Ex. A at 107:20-10), and that she did not appear in court for that conference, (*id.* at 108:11-12).  Further, Plaintiff does not allege or present any evidence as to whether the warrant itself was based on deceptive information submitted to the issuing judge.  Nor does Plaintiff argue in her opposition brief that the bench warrant did not provide probable cause for her arrest.  (*See generally* ECF No. 39.)

Therefore, the Court finds that Plaintiff's bench warrant provides probable cause for her arrest.  Accordingly, the Court grants Defendants' Motion for Summary Judgment with respect to Plaintiff's claim for unlawful arrest and imprisonment against Detective Radlinsky.

### 2.  *Malicious Prosecution – Proximate Causation*

Next, the Court turns to the parties' proximate causation arguments as they relate to Plaintiff's remaining § 1983 claim for malicious prosecution against Detective Radlinsky.  Plaintiff argues that her entire interaction with the court system was attributable to Detective Radlinsky's malicious charges and therefore, he is the proximate cause of her harm (*i.e.*, arrest and imprisonment).  (ECF No. 39 at 27.)  On the other hand, Defendants contend that Plaintiff's failure to appear proximately caused her alleged damages, not the charges brought against her. (ECF No. 32-1 at 16-19.)

It is well established that "[a] § 1983 claim requires that the state actor was the proximate cause of the plaintiff's harm."  *Johnson*, 646 F. App'x at 282 (citing *Egervary v. Young*, 366 F.3d 238, 246 (3d Cir. 2004)); *Castro v. State of New Jersey*, 521 F. Supp. 3d 509, 524 (D.N.J. 2021) (same); *see also Burnsworth v. PC Lab.*, 364 F. App'x 772, 775 (3d Cir. 2010) ("It is axiomatic that '[a] §1983 action . . . employs the principle of proximate causation.'" (citing *Hedges v. Musco*,

204 F.3d 109, 121 (3d Cir. 2000))). The Third Circuit has held that "[t]o establish the necessary causation, a plaintiff must demonstrate a 'plausible nexus' or 'affirmative link' between the [defendant's action] and the specific deprivation of constitutional rights at issue." *Hedges*, 204 F.3d at 121 (citing *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). "As a general matter, the actions of a judicial officer sever the chain of causation between any police conduct and an improper arrest." *Johnson*, 646 F. App'x at 282 (citations omitted). However, the Third Circuit has clarified that judicial action would be precluded "as a superseding cause only in the situation in which the information, submitted to the judge, was deceptive." *Id.* (citations and internal quotations omitted).

Here, Plaintiff has not presented any evidence that a genuine issue of fact exists as to whether the bench warrant for Plaintiff's arrest was issued as a result of deceptive information submitted to the judge by Detective Radlinsky. Indeed, the issuance of the bench warrant appeared to be a direct result of Plaintiff's failure to appear, as stated in the letter notifying Plaintiff of the issuance of the bench warrant. (*See* ECF No. 32-2 Ex. L at 98.) Further, based on the record, the Court does not find any indication that the court issued the bench warrant for Plaintiff's arrest as a result of any deception by Detective Radlinsky.[9] *See, e.g., Johnson*, 646 F. App'x at 282; *Piazza v. Lakkis*, Civ. No. 11-2130, 2013 WL 424724, at *4 (M.D. Pa. Feb. 4, 2013) ("There is no allegation, nor could there be, that an issuance of a warrant by a judge in whose court the plaintiff undisputedly failed to appear is somehow a continuing malicious act by the defendant.").

---

[9]     Plaintiff does present evidence as to whether Detective Radlinsky's affidavit of probable cause contained recklessly false or otherwise deceptive information with respect to the victim's identification of Plaintiff as a suspect. However, there is no indication in the record that the judge relied on the affidavit in issuing the bench warrant for Plaintiff's failure to appear.

In a factually analogous case, the plaintiff in *Piazza* failed to appear at a scheduled arraignment at court and as a result, the court issued a bench warrant that led to her arrest and retention at a correctional facility. *Id.* at *1. The plaintiff there asserted that she received notice of the hearing but believed it was not necessary to appear. *Id.* The *Piazza* court found that the plaintiff was unable to establish that the defendant was the proximate cause of her deprivation of liberties because "plaintiff's own negligence [in failing to appear] severs the necessary nexus between the acts of the defendants and her deprivation."[10] *Id.* at *4.

Further, because the bench warrant was the proximate cause of Plaintiff's arrest, her arguments related to deprivation of liberty lack merit. Plaintiff asserts that she was deprived of liberty due to the pending legal proceedings beyond her arrest. (ECF No. 39 at 35-36.) For instance, Plaintiff asserts that she appeared in court on three separate occasions, was fingerprinted, and did not have her charges dismissed for six months after her arrest (ECF No. 38-1 Ex. A at 102:9-15; 104:5-8; 105:12-25; Defs. SMF ¶ 34.) These restrictions, however, are not sufficient to constitute a deprivation of Plaintiff's liberty interests. *See Black v. Montgomery Cnty.*, 835 F.3d 358, 367 (3d Cir. 2016). While, the Third Circuit has held that "some onerous types of pretrial, non-custodial restrictions constitute" a deprivation of rights, *Id.*, Plaintiff has not alleged any "significant pretrial restrictions," such as, whether Plaintiff was free to travel, whether she posted bail, whether she had to regularly report to pretrial services, or any other restrictions demonstrating Plaintiff's liberty was restricted. *Id.*; *see also Gallo v. City of Philadelphia*, 161 F.3d 217, 222 (3d Cir. 1998) (finding that the Plaintiff's liberty was restricted because "he had to post a $10,000

---

[10]    Because the Court grants summary judgment as to Plaintiff's § 1983 claims for unlawful arrest and imprisonment and malicious prosecution, the Court need not address Defendants' probable cause or qualified immunity arguments with respect to those claims.

bond, . . . attend all court hearings including his trial and arraignment, . . .was required to contact [p]retrial [s]ervices on a weekly basis, and he was prohibited from traveling outside New Jersey and Pennsylvania."); *cf. DiBella v. Borough of Beachwood*, 407 F.3d 599, 603 (3d Cir. 2005) (finding that the plaintiffs' liberty was not restricted because they "were only issued a summons; they were never arrested; they never posted bail; they were free to travel; and they did not have to report to Pretrial Services.  Their liberty was restricted only during the Municipal Court trials and the Fourth Amendment does not extend beyond the period of pretrial restrictions.").

Therefore, the Court grants Defendants' Motion for Summary Judgment with respect to Plaintiff's claim for malicious prosecution against Detective Radlinsky.

### B.     Section 1983 Claim for Municipal Liability (Count X)

The Court next addresses Plaintiff's municipal liability claims.  To find a municipality liable under § 1983, a plaintiff must prove the existence of a policy or custom that resulted in a constitutional violation.  *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694-95 (1978).  Liability "must be founded upon evidence that the government unit itself supported a violation of constitutional rights."  *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990).  A plaintiff can show the existence of a policy when a decisionmaker with final authority "issues an official proclamation, policy, or edict."  *Id.* (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)).  Custom may be established by showing that a "course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law."  *Id.*  A plaintiff must also "demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged."  *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404 (1997) (emphasis in original).

17

To make out a claim under a failure to train or supervise theory, the plaintiff must show that "the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014) (citation omitted). "Additionally, 'the identified deficiency in a . . . training program must be closely related to the ultimate injury;' or in other words, 'the deficiency in training [must have] actually caused' the constitutional violation." *Id.* (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 391 (1989)).

Importantly, municipal liability under § 1983 requires an underlying constitutional violation. *See Monell*, 436 U.S. at 690-91. Indeed, without a "violation in the first place, there can be no derivative municipal claim." *See Mulholland v. Gov't Cnty. of Berks, Pa.*, 706 F.3d 227, 245 n.15 (3d Cir. 2013); *Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (if a municipal employee "inflicted no constitutional injury . . ., it is inconceivable that [the municipality] could be liable"). Here, the Court has dismissed Plaintiff's Fourth and Fourteenth Amendment claims against Detective Radlinsky, so no constitutional violation exists to provide a basis to hold Lawrence liable under § 1983. *See, e.g., Hohsfield, v. Staffieri*, Civ. No. 21-19295, 2021 WL 5086367, at *4 (D.N.J. Nov. 1, 2021) (finding that the plaintiff's claims against the township failed because the court dismissed underlying civil rights claims); *Brooks v. Codispoti*, Civ. No. 12-05884, 2015 WL 9462086, at *11 (D.N.J. Dec. 28, 2015) (finding that "[s]ince this [c]ourt will dismiss [the] [p]laintiff's § 1983 claims against [the] [d]efendants . . . for racial profiling, false arrest/imprisonment, malicious prosecution, and illegal search, municipal liability for these causes of action must also be dismissed"). Therefore, the Court grants Defendants' motion with respect to Plaintiff's § 1983 claim against Lawrence Township.

### C.    Supervisory Liability Claim (Count XI)

Next, the Court dismisses Plaintiff's claim for supervisory liability against "Lawrence John Doe Defendant" pursuant to Rule 21, which states, in relevant part, that "parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just."  Fed. R. Civ. P. 21.  District Courts in this Circuit have used this Rule to exclude John Doe parties from an action where appropriate.  *Adams v. City of Camden*, 461 F. Supp. 2d 263, 271 (D.N.J. 2006) (citing *Hightower v. Roman, Inc.*, 190 F. Supp. 2d 740, 754 (D.N.J. 2002); *see also Atlantic Used Auto Parts v. City of Pa.*, 957 F. Supp. 622, 625 (E.D. Pa. 1997) ("[F]ictitious party names may be used 'at least until reasonable discovery permits the actual defendants to assume their places. . . ,' however, . . . '[f]ictitious names must eventually be dismissed, if discovery yields no identities.'").

Here, the Complaint was filed on June 26, 2019, and Defendants answered on September 9, 2019. On October 20, 2020, the Magistrate Judge ordered fact discovery to be completed by December 31, 2020.  Since then, Plaintiff has not substituted the identity of the unnamed John Doe Defendant in this action.  Thus, the Court determines that the interests of justice permit dropping this unnamed party from the suit.  *See, e.g., Jones*, 2009 WL 10727989, at *7.  Therefore, the Court dismisses Plaintiff's supervisory liability claim against Lawrence John Doe Defendant (Count XI). Lawrence John Doe is dismissed from this action.

### D.    State Law Claims (Counts XII, XIII, and XIV)

Plaintiff also asserts claims for false arrest and imprisonment, malicious prosecution, and violations of the NJCRA.

### 1. *False Arrest and False Imprisonment*

Under New Jersey law, "[a] basis for a suit for false arrest arises where the aggrieved party is arrested without legal authority, as where he is arrested pursuant to process that is void. False arrest, or false imprisonment, is the constraint of the person without legal justification." *Mesgleski v. Oraboni*, 748 A.2d 1130, 1138 (N.J. Super. Ct. App. Div. 2000). False arrest "requires an arrest or detention of the person against his or her will; and lack of proper legal authority or 'legal justification.'" *Id.* (quoting *Barletta v. Golden Nugget Hotel Casino*, 580 F. Supp. 614, 617 (D.N.J. 1984)). "[F]alse imprisonment requires (1) arrest or detention against a person's will and (2) lack of legal authority or justification." *Bernard v. Cosby*, 648 F. Supp. 3d 558, 574 (D.N.J. 2023).

Because the Court has already determined that Plaintiff's arrest and imprisonment was justified based on her failure to appear, her state law claim for false arrest and false imprisonment is also dismissed for the same reason.

### 2. *Malicious Prosecution*

The New Jersey Supreme Court has made clear that "malicious prosecution is not a favored cause of action because citizens should not be inhibited in instituting prosecution of those reasonably suspected of crime." *Brunson v. Affinity Credit Union*, 972 A.2d 1112, 1119 (N.J. 2009) (quoting *Lind v. Schmid*, 337 A.2d 365, 368 (N.J. 1975)). A plaintiff may, however, succeed on a malicious prosecution claim under New Jersey law if the following elements are met: "(1) a criminal action was instituted by this defendant against this plaintiff; (2) the action was motivated by malice; (3) there was an absence of probable cause to prosecute; and (4) the action was terminated favorably to the plaintiff." *LoBiondo v. Schwartz*, 970 A.2d 1007, 1023 (N.J. 2009). Unlike a § 1983 claim, New Jersey law does not contain the "requirement that the plaintiff [be] deprived of his or her liberty." *Roberts v. County of Essex*, 648 F. Supp. 3d 519, 535 (D.N.J.

2022).  A plaintiff can allege emotional distress, loss of employment, and the like, which would be recoverable under state law.  *See, e.g., Rumbauskas v. Cantor*, 649 A.2d 853, 856 (N.J. 1994) (noting that in malicious prosecution cases "some of the major elements of damages are humiliation, embarrassment, mental suffering, and wounded sensibilities"); *Epperson v. Wal-Mart Stores, Inc*, 862 A.2d 1156, 1163 (N.J. Super. Ct. App. Div. 2004) (noting that damages related to loss of present or prospective employment which can be proved with reasonable certainty to have been caused by the prosecution are recoverable).

Nevertheless, the Court finds that Plaintiff's claim fails as Detective Radlinsky had probable cause to initiate the criminal proceedings against Plaintiff and obtain an arrest warrant. *See id.* at 1121 (noting that courts will not "view the probable cause determination through the harsh and unforgiving glare of hindsight"); *see also Mitchell v. Obenski*, 134 F. App'x 548, 551 (3d Cir. 2005) ("[T]he mere fact that a police investigation could have been more thorough does not vitiate probable cause.").

"It is understood that '[t]he essence of the cause of action [for malicious prosecution] is lack of probable cause[.]'" *Brunson*, 972 A.2d at 1119 (alteration in original) (quoting *Lind*, 337 A.2d at 368).  Specifically, "'[t]he plaintiff must establish a negative, namely, that probable cause did not exist.'"  *Id.*  Under New Jersey law,

> The probable cause standard is a well-grounded suspicion that a crime has been or is being committed.  Probable cause exists where the facts and circumstances within . . . [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a [person] of reasonable caution in the belief that an offense has been or is being committed.  The substance of all the definitions of probable cause is a reasonable ground for belief of guilt."
>
> [*Id.* at 1121-22 (quoting *State v. O'Neal*, 921 A.2d 1079 (N.J. 2007) (quoting *State v. Moore*, 853 A.2d 903 (N.J. 2004) (alterations in original) (citations and internal quotation marks omitted))).]

When applying that standard, courts must consider the totality of circumstances in determining whether there is probable cause, and courts must make a "practical, common sense determination." *Id.* at 1122.  Additionally, courts may look beyond the affidavit of probable cause when a party challenges the validity of probable cause.  *See State of New Jersey v. Smith*, 54 A.3d 772, 792 (N.J. 2012) (inserting additional evidence into the affidavit of probable cause to determine whether the affidavit established probable cause).

Detective Radlinsky went to the South Brunswick Target and obtained surveillance footage and two still images of the persons who had attempted three transactions using P.L.'s credit cards. (Defs. SMF ¶ 10; Pl. SMF ¶ 10.)  The still images taken from the Target surveillance video, (ECF No. 32-2 Ex. G at 51-53), showed a Black female wearing a white baseball cap, a dark jacket, and blue jeans.  (Defs. SMF ¶ 11; Pl. SMF ¶ 11.)  Subsequently, Detective Radlinsky viewed the online bulletin posted by Officer Pepe, which identified Plaintiff as the suspect in a similar theft from the same day as the Zoe's Kitchen theft.  (ECF No. 32-2 Ex. C at 42-43.)  The bulletin contained a photo of a Black female wearing a white baseball cap, a dark jacket, and blue jeans, clothes that Detective Radlinsky believed matched the clothes of the same Black female suspect from the South Brunswick Target surveillance video.  (ECF No. 32-2 Ex. G at 57-62.)  Because this information came from another law enforcement agency, Detective Radlinsky had no reason to doubt its accuracy.  *See also United States v. Yusuf*, 461 F.3d 374, 385 (3d Cir. 2006) ("[I]nformation received from other law enforcement officials during the course of an investigation is generally presumed to be reliable."); *United States v. Hodges*, 354 F.3d 305, 311 n.1 (4th Cir. 2004) ("[S]tatements of other law enforcement officers 'are plainly . . . reliable' even without any special showing." (quoting *United States v. Ventresca*, 380 U.S. 102, 111 (1965))); *United States v. Meade*, 110 F.3d 190, 193 (1st Cir. 1997) ("[L]aw enforcement officials cooperating in an

investigation are entitled to rely upon each other's knowledge of facts when forming the conclusion that a suspect has committed or is committing a crime.")

Detective Radlinsky also, independent of Officer Pepe's findings, compared Plaintiff's driver's license photo, (ECF No. 32-2 Ex. H at 63-64), to the surveillance video from the South Brunswick Target, (ECF No. 32-2 Ex. E at 51-53), and believed that the female with the white baseball cap was Plaintiff.  (ECF No. 32-2 Ex. D at 106:10-15.)  Detective Radlinsky testified that his identification "was based on the shape of her face, the shape of her nose, her lips, anything that I could see below the eyebrows because the brim of the hat comes down."  (*Id.* at 75:12-23.)  *Cf. Schneider v. Simonini*, 749 A.2d 336, 354 (N.J. 2000) ("There was no objective or reliable evidence of a linkage between the plaintiff and the crime, except for the misfortune of having the same name as the real hijacker.  No positive identification was made; nor was his identity even potentially confirmed through photographs.  [The officer] was essentially acting on a hunch.").

Finally, Detective Radlinsky met with P.L., the victim of the Zoe's Kitchen theft, and showed P.L. the still images from the South Brunswick Target's surveillance video (ECF No. 32-2 Ex. E at 51-53).  (*See* ECF No. 32-2 at 57-63.)  From those images, P.L. identified the Black female wearing the white baseball cap as one of the Black female suspects that sat behind him at Zoe's Kitchen.[11]  (*Id.*)  *See Baynard v. Mona*, Civ. No. 20-7723, 2021 WL 4473154, at *7 (D.N.J.

---

[11]    Even though Plaintiff objects to the identification procedures used with P.L., the Court need not rely on P.L.'s identification to find that Detective Radlinsky had probable cause to initiate the criminal proceeding against Plaintiff.  Additionally, to the extent Detective Radlinsky made misrepresentations before the grand jury as to P.L.'s identification, the Court finds that Plaintiff has failed to show that such misrepresentation improperly influenced the grand jury that would defeat a finding of probable cause.  *See also State of New Jersey v. Francis*, 926 A.2d 305, 314 (N.J. 2007) (noting that there is no abuse of the grand jury process unless the government improperly influences the grand jury's determination).  There was sufficient evidence in Detective Radlinsky's grand jury testimony to establish probable cause absent P.L.'s identification.  (*See generally* ECF No. 32-2 at 78-94.)

Sept. 30, 2021) (noting that identifications made by victims are usually sufficient to establish probable cause).

Based on the totality of circumstances, and the record before this Court, the Court finds that Detective Radlinsky had probable cause to initiate the criminal proceedings against Plaintiff based on his reliance of Officer Pepe's identification of Plaintiff, regardless of whether that identification was correct or not. *See Yusuf*, 461 F.3d at 378, 396-97 (finding that even though the affiant officer submitted an affidavit of probable cause to a court with incorrect information from a sister governmental agency, the officer had no reason to doubt the accuracy of the supplied information especially when information from other government entities is presumed to be reliable); *see also State of New Jersey v. MaClay*, 2012 WL 635615, at *4 (N.J. Super. Ct. App. Div. Feb. 22, 2012) ("Generally, where an officer relies on information provided by others the question is the reasonableness of the officer's reliance on that information under the totality of the circumstances.  However, when the source of information is another police officer, the reliability may usually be presumed.").[12]  Therefore, summary judgment is granted as to Plaintiff's state law malicious prosecution claim.

### 3. NJCRA

In relevant part, the New Jersey Civil Rights Act provides:

> Any person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person

---

[12]     As outlined in this Court's separate Opinion as to the Green Brook Defendants, the Court has determined that a question of fact exists as to whether Officer Pepe's identification of Plaintiff was correct.  (*See* ECF No. 83 at 18.)

acting under color of law, may bring a civil action for damages and for other injunctive or other appropriate relief.

[N.J. Stat. Ann. § 10:6-2(c).]

"The NJCRA 'was modeled after 42 U.S.C. § 1983, and creates a private cause of action for violations of civil rights secured under the New Jersey Constitution[ ].'" *Greenman v. City of Hackensack*, 486 F. Supp. 3d 811, 837 (D.N.J. 2020) (quoting *Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443 (D.N.J. 2011)). "This district has repeatedly interpreted NJCRA analogously to § 1983." *Hottenstein v. City of Sea Isle City*, 977 F. Supp. 353, 365 (D.N.J. 2013) (quoting *Pettit v. New Jersey*, 2011 WL 1325614, at *3 (D.N.J. Mar. 30, 2011)).

Because the "allegations under the separate constitutions are virtually identical, and federal and New Jersey law governing these violations are substantially similar," *Middleton v. City of Ocean City*, Civ. No. 2014 WL 2931046, at *5 (D.N.J. June 30, 2014) (citing *Hedges v. Musco*, 204 F.3d 109, 121 (3d Cir. 2000)), summary judgment is granted as to Plaintiff's NJCRA claim.

## IV.    CONCLUSION

For the reasons stated above, and other good cause shown, the Court **GRANTS** Defendants' Motion for Summary Judgment. An appropriate Order will follow.

Date: November  21 , 2024

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE

25